# United States District Court

## SOUTHERN DISTRICT OF NEW YORK

**SHARON LaFia**

*Plaintiffs*

–v–

**NEW YORK CITY, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION, JEFFREY EUSTACHE** in his individual and in his official capacity, **PRINCIPAL INDIRA MOTA,** in her individual and in her official capacity, **LINDSAY CICILLINI,** in her individual and in her official capacity, **NEW YORK CITY LAW DEPARTMENT, FORMER NEW YORK CITY LAW DEPARTMENT ATTORNEY BRITTNEY JORDAN FINDER,** in her individual and in her official capacity, **AND JOHN AND JANE DOES NOS. 1-10;**

*Defendants,*

# AMENDED VERIFIED COMPLAINT

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for Sharon LaFia*
Office & P.O. Address
135 Pinelawn Road, Suite 250s
Melville NY 11747
Phone: (631) 450–2515
FAX: (631) 223–7377
Email: Cory.H.Morris@protonmail.com

# TABLE OF CONTENTS

Verified Complaint ...................................................................... 3

Plaintiff demands a trial by Jury ............................................... 3

Preliminary Statement................................................................ 3

Introduction ................................................................................ 3

Jurisdiction and Venue ............................................................ 10

Administrative Proceedings and Timeliness............................ 10

Parties ...................................................................................... 12

The Facts.................................................................................. 15

    Preferential treatment on the basis of sex/gender and/or race/color ................................................................................ 29

    Retaliation against LaFia and Placing Jeffrey Eustache back in her classroom when he filed a 2.5 Million Dollar Lawsuit against Sharon LaFia ............................................. 32

    Retaliation and Pretext: Plaintiff's hearing and Due Process Deprivations ....................................................................... 34

    The continued persecution of Sharon LaFia....................... 37

    42 U.S.C. §§ 2000A, 2000-D: Civil Rights Act Title VI, Hostile Education Environment and Hostile Work Environment...................................................................... 38

Family Medical Leave Act ("FMLA") Discrimination and Retaliation............................................................................ 42

Judiciary Law, Invasion of privacy and Fourth Amendment violations ........................................................................ 43

Plaintiff's "Monell" claim; 42 U.S.C. §§ 1981, 1983, 1985 and 1986 .......................................................................... 45

Defamation/Slander/Stigma Plus ............................................. 46

Federal & Pendent State Law Claims ....................................... 48

Malicious prosecution ............................................................... 49

Discrimination, Hostile Work Environment & Retaliation under state and federal law ............................................... 50

New York State Executive Law § 296 ....................................... 51

Abuse of Process ....................................................................... 51

Negligence and Negligent Retention ........................................ 51

Negligent and/or Intentional Infliction of Emotional Distress 52

Prima Facie Tort ...................................................................... 53

Injuries and Damages .............................................................. 54

Prayer for Relief ....................................................................... 54

## Verified Complaint

Plaintiff Sharon LaFia ("LaFia"), a tenured special education teacher for more twenty-five years without a single complaint until now, files this verified complaint by her attorneys, the Law Office of Cory H. Morris, to address the hostile education/work environment and the various acts of discrimination and ongoing retaliation by various persons employed by New York City ("NYC") and the New York City Department of Education ("DOE").

## Plaintiff demands a trial by Jury

## Preliminary Statement

This is a civil action seeking a declaratory judgment, and equitable relief, together with compensatory, general, and punitive damages, costs, disbursements, and attorneys' fees from the Defendants acts of workplace related discrimination and retaliation; for violating Plaintiff's civil rights, and violations of her rights under the United States Constitution and New York State Constitutions; and for violations of state law by their negligence, defamation, stigma and slander, abuse of process, negligent and/or intentional infliction of emotional distress, and prima facie tort resulting in injury and damage to the Plaintiff, SHARON LAFIA.

## Introduction

1.  Plaintiff, SHARON LAFIA, alleges that Defendants, jointly and severally, individually and collectively, intentionally, knowingly, wantonly, negligently, and/or recklessly, sought to and did discriminate and retaliate against her, causing various injury and damages and wrongfully depriving her of her civil, constitutional, and human rights by acts committed under color of law.

2. Starting in February 2018, Ms. LaFia was wrongfully targeted on the basis of her color/race and/or sex/gender, summarily punished, subject to a false complaint, including but not limited to investigation involving, among other wrongs, invasion of personal privacy, without legal justification, that culminated in Defendant BRITTNEY JORDAN FINDER, an attorney, taking SHARON LAFIA's personal cellular phone and copying the entirety of it without LaFia's representation by her union or lawyer.

3. Despite several attempts, including a New York County ("NYC") Supreme Court filing, *Sharon LaFia v. New York City et al,* 154691/2021 to enforce New York's Freedom of Information Law ("FOIL"), Defendants have not produced SHARON LAFIA's cellular phone data to her albeit BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department of Education," "NYC DOE" or "DOE") prosecuted her and sought her dismissal for false charges nearly all of which were dismissed.

4. Starting on or about February, 2018 and continuing to this day (the latest by which was refusal to accept Family and Medical Leave ("FMLA") requests), Plaintiff SHARON LAFIA, by means of the false complaint of Defendant JEFFREY EUSTACHE, suffered discrimination on the basis of race/color/sex/gender, being treated less favorably than non-female non-Caucasian workers by NYC DOE.

5. Defendants, individually and collectively, engaged in or allowed and permitted  defamation, stigma, libel, slander malicious prosecution, abuse of process, deliberate

indifference, failure to indemnify, intentional infliction of emotional distress, negligent infliction of emotional distress, all the while creating of and maintaining a hostile working/hostile education environment for SHARON LAFIA, and violating the human and civil rights of Ms. LAFIA.

6. Plaintiff, SHARON LAFIA, alleges that Defendants, jointly and severally, individually and collectively, intentionally, knowingly, wantonly, negligently, and/or recklessly, sought to produce and allow the false complaint against her to persist and acted favorably towards Defendant JEFFREY EUSTACHE on the basis of his race/color, a black/African American, and sex/gender, a male, albeit Defendant JEFFREY EUSTACHE engaged in misconduct, and caused physical/emotional harm to those around him, for which he was to be disciplined.

7. Defendant JEFFREY EUSTACHE made false complaints using the NYC DOE while avoiding reprimand as the subject of several reports of physical harassment of students, watching pornography on his phone (as reported to Plaintiff, Ms. Estrella and a parent Ms Herendez, Jaylin's parent), and other complaints by initiated by parents and told to PRINCIPAL INDIRA MOTA.

8. Instead of reprimand Defendant JEFFREY EUSTACHE, **PRINCIPAL INDIRA MOTA** through the NYC DOE, used Plaintiff SHARON LAFIA as a scapegoat for JEFFREY EUSTACHE'S misconduct by falsely claiming that *he* was subject to sexual harassment and discrimination by Plaintiff SHARON LAFIA.

9. Plaintiff SHARON LAFIA is forced to file this amended complaint after suffering ongoing and continuing retaliation,

discrimination, a series of constitutional violations, wrongful search, wrongful seizure, defamation, stigma, libel, slander, malicious prosecution, abuse of process, deliberate indifference, intentional infliction of emotional distress, negligent infliction of emotional distress, loss of income and the need to continue working in a hostile working/hostile education environment (see *DM et al v. St. Mary School et al*, 18-cv-3099 (DRH)(GRB) (EDNY)).

10. The hostile working/hostile education environment resulted from, among other wrongs by the Defendants, the negligent hiring, training, retention, and supervision, acts of negligence, recklessness and intentional acts of New York City, its agents and employees, the DOE, its agents and employees who, upon information and belief, conspired with aided, and failed to intervene in response to Defendants', as orchestrated by JEFFREY EUSTACHE, scheme to defraud NYC and DOE while exonerating Defendants JEFFREY EUSTACHE's misconduct and enriching themselves in their employment with the DOE.

11. SHARON LAFIA was unlawfully searched and suffered constitutional violations.

12. SHARON LAFIA was stigmatized, defamed and wrongfully accused of a sexual harassment and race discrimination.

13. SHARON LAFIA was subject to discrimination and retaliation in complying with the demands of NYC.

14. SHARON LAFIA was deceived into, among other things, an illegal search and download of her cellular phone by Defendant BRITTNEY JORDAN FINDER under the ruse she

represented SHARON LAFIA in the lawsuit filed by Defendant JEFFREY EUSTACHE.

15. Defendants, individually and collectively, knew and had reason to know that there was no merit to the complaint by Defendant JEFFREY EUSTACHE and continuance of the accusation/prosecution which was malicious and unfounded and that the defamation, stigma, libel, slander malicious prosecution, abuse of process, deliberate indifference, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress and pursuit of such false charges was illegal.

16. On or about October 2, 2019, Defendant JEFFREY EUSTACHE was restored to service and placed back in the classroom with Plaintiff after Defendants, individually and collectively, made and supported false allegations that Plaintiff sexually discriminated and harassed JEFFREY EUSTACHE.

17. Instead of separate Plaintiff and JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA decided to ignore Plaintiff's complaints of a hostile education environment, that she felt unsafe and that she was the subject of a multimillion dollar lawsuit by JEFFREY EUSTACHE.

18. In response, Defendants placed SHARON LAFIA, a teacher who was never subjected to any complaints in over two (2) decades, in a "rubber room", preventing her from progressing in her career with Defendants NYC and DOE.

19. Defendants, individually and collectively, pursued charges based on the false allegations and withheld exonerative evidence that was illegally obtain by state actor BRITTANY

FINDER and as a result of which administrative charges were brought against SHARON LAFIA which were continued for a pre-hearing conference (October 6, 2020) and remote hearings on December 9 and 17, 2021, January 5, 18, 19, 24 and 28, February 7, 10, 15, and 28, March 1, 3, and 15, 2022 requiring SHARON LAFIA to defend against false charges, and causing Plaintiff to endure stigma, suffer emotional distress, and prevent her from progressing in her career.

20. SHARON LAFIA was subjected to a formal disciplinary hearing, *NYCDOE v. LaFia SED No. 36157 3020-a*, which ultimately resulted in the dismissal of several school charges but did not afford her the due process, by including the alleged proof that DOE took by unlawful search and seizure.

21. *NYCDOE v. LaFia SED No. 36157 3020-a* resulted in findings based on false evidence, false testimony, and did not give SHARON LAFIA any meaningful opportunity to obtain evidence to challenge false allegations nor provide her the opportunity to review the alleged evidence obtained from her by a state actor under false and illegal pretenses.

22. SHARON LAFIA suffered discrimination as a white woman, by being afforded less due process than the black male who falsely accused her of sexual harassment.

23. To this date, SHARON LAFIA suffers physical and emotional distress and continued discrimination against her as a result of Defendants' actions.

24. Defendants, individually and/or collectively, jointly and/or severally, created and fostered a Hostile Education Environment for SHARON LAFIA by, among other acts, placing

JEFFREY EUSTACHE back in the classroom with Ms LaFia after she voiced complaints and concerns about him and was then made the subject of a multimillion dollar lawsuit by JEFFREY EUSTACHE.

25. Defendants, individually and collectively, knew and had reason to know that JEFFREY EUSTACHE engaged in various acts of misconduct and physical violence prior to making false allegations of misconduct against Plaintiff, to use her as a scapegoat to avoid accountability, as told directly to NYC DOE and PRINCIPAL INDIRA MOTA inclusive of:

- The physical harassment of student David Douglas;

- The threat to fight student Issac Nunez; and

- Verbal abuse to students due that was ignored by PRINCIPAL INDIRA MOTA  by the Parent Of Justin Velez, Parent of Jaylin Santigo, Parent of twin brothers Justin Corredo and Josh Corredo, Parent of Amanda Torres, Parent of Destiny Gonzelez, Parent of Aman, Parent of Thomas , Parent of Layani, Parents of Justin Alya, Parent of Jeremiah and the Mother of Zaire (hereinafter referred to as "Complaining Parents").

26. Complaining Parents provided continued notice of a Hostile Education Environment to PRINCIPAL INDIRA MOTA and NYC DOE that Defendants, individually and collectively, failed to address and ignored.

27. Defendants, individually and/or collectively, jointly and/or severally, have maintained a hostile work environment for

SHARON LAFIA, by, among other actions, failing to approve Family Medical Leave to care for her daughter with cancer.

28. Defendants, individually and/or collectively, jointly and/or severally, transferred Plaintiff out of the school in which she taught for over twenty (20) years without incident as an obvious act of retaliation and in furtherance of the Hostile Education Environment endorsed by PRINCIPAL INDIRA MOTA.

29. No other request for the relief requested herein has been made.

## JURISDICTION AND VENUE

30. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

31. This Honorable Court is requested to exercise supplemental jurisdiction with respect to Plaintiffs' State Law claims pursuant to 28 U.S.C. §1367.

32. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986.

33. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the place where the events and violations herein alleged occurred was throughout the five boroughs of Manhattan and that New York City Offices are located within New York City, New York.

## ADMINISTRATIVE PROCEEDINGS AND TIMELINESS

34. This action has been commenced within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

35. On or about January 13, 2020 Plaintiff filed a Notice of Claim which is incorporated fully herein and is available via New York State Courts Electronic Filing ("NYSCEF"), *LaFia v. New York City et al,* Index No. 152739/2020, Doc. No. 4, available at: https://bit.ly/3RJV8xK. That litigation was filed to obtain indemnification from NYC and the DOE from the litigation filed by Jeffrey Eustache. NYC and DOE were successful in defending this litigation.

36. No General Municipal Law § 50-h hearing request was made.

37. Plaintiff SHARON LAFIA has exhausted any available/potentially effective administrative remedies.

38. On or about February 7, 2020, Plaintiff filed her complaint of discrimination with the New York State Division of Human Rights ("NYSDHR") and it was cross-filed with the Equal Employment Opportunity Commission ("EEOC"); which is incorporated fully herein and is available via NYSCEF in *LaFia v. New York City et al,* Index No. 152739/2020, Doc. No. 30, available at: https://bit.ly/3U7WCDo.

39. A right to sue letter was issued on or about July 14, 2022 and is attached and incorporated in this Verified Complaint.

40. Plaintiff timely commenced this action within ninety (90) days of that right to sue letter.

41. Defendants refused to adjust the claim and more than ninety (90) days have passed.

42. This complaint has been amended as a matter of right and prior to service.

## PARTIES

43. Plaintiff, SHARON LaFIA is a citizen of the United States is employed with NYC and DOE as a Special Education teacher.

44. Plaintiff worked, without a blemish to her career, for over twenty (20) years at I.S. 171 Abraham Lincoln Intermediate School within District 19, Brooklyn, New York, ("I.S. 171) prior to the events complained of herein.

45. At all times relevant in this Complaint, and upon information and belief, Defendant NEW YORK CITY, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION AND THE NEW YORK CITY LAW DEPARTMENT, are recipients of federal funding and were recipients of federal funding at the time of the events complained of herein.

46. NEW YORK CITY, is a municipal entity and part of the State of New York. See Official Website of the City of New York, *About New York City Government,* City of New York (last accessed on September 14, 2022), https://on.nyc.gov/3dfvnX9.

47. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION is a municipal entity responsible for the education of children within the City of New York together with the employment of LINDSAY CICILLINI and JEFFREY EUSTACHE along with Plaintiff SHARON LaFIA.

48. NEW YORK CITY LAW DEPARTMENT is a municipal entity responsible for the defense of the Department of Education, DOE and NYC.

49. NEW YORK CITY LAW DEPARTMENT ("Law Dep't.") "represents the City, the Mayor, other elected officials, and the City's many agencies in all affirmative and defensive civil litigation…" and was responsible for the employment of ATTORNEY BRITTNEY JORDAN FINDER during the time of the illegal search of Plaintiff's cellular phone. NYC, *New York City Law Department*, NYC Law Dep't. (last accessed on September 14, 2022), https://on.nyc.gov/3QLqa75.

50. FORMER NEW YORK CITY LAW DEPARTMENT ATTORNEY BRITTNEY JORDAN FINDER, ("Finder") is sued in her individual and in her official capacity, worked for the Law Dep't at the time she illegally obtained evidence from Plaintiff's cellular phone without a warrant and, upon information and belief, maintains a registration number of 5579149 and currently works for Epstein Becker & Green, P.C. (875 3rd Ave, New York, NY 10022-6225). See OPENGOVUS, *Brittany Jordan Finder*, (last accessed on September 14, 2022), https://bit.ly/3UhjfFQ.

51. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION and NEW YORK CITY LAW DEPARTMENT, FORMER NEW YORK CITY LAW DEPARTMENT ATTORNEY BRITTNEY JORDAN FINDER, in her individual and in her official capacity, are collectively referred to as "NYC Defendants."

52. JEFFREY EUSTACHE, sued in his individual and in his official capacity, is employed by NYC and DOE as a paraprofessional.

53. Jeffrey Eustache ("Eustache") still works at I.S. 171 Abraham Lincoln Intermediate School in Brooklyn, New York.

54. PRINCIPAL INDIRA MOTA ("Mota") sued in her official capacity is the principal of I.S. 171 and was responsible for, among other things, the creation and maintaining a Hostile Education Environment for SHARON LAFIA.

55. LINDSAY CICILLINI, ("CICILLINI") sued in her official capacity, worked at I.S. 171 Abraham Lincoln Intermediate School in Brooklyn, New York.

56. Defendants, individually and/or collectively, jointly and/or severally, knew and had reason to know that CICILLINI previously took coemployees phones, such as Plaintiff's cellular phone, to engage in misconduct before was transferred out of I.S. 171.

57. DOE, JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA and LINDSAY CICILLINI are collectively referred to herein as "DOE Defendants."

58. JOHN AND JANE DOES NOS. 1-10 are agents, assigns, employees within NYC or, more specifically, DOE or other persons that engaged, endorsed or were complicit (when each person had a duty to act or intervene) the illegal acts, discrimination, retaliation and constitutional violations suffered by PLAINTIFF SHARON LAFIA.

59. Together NEW YORK CITY, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION, JEFFREY EUSTACHE in his individual and in his official capacity, PRINCIPAL INDIRA MOTA, in her official capacity, LINDSAY CICILLINI, IN HER INDIVIDUAL AND IN HER OFFICIAL CAPACITY, NEW

YORK CITY LAW DEPARTMENT, FORMER NEW YORK
CITY LAW DEPARTMENT ATTORNEY BRITTNEY
JORDAN FINDER, IN HER INDIVIDUAL AND IN HER
OFFICIAL CAPACITY, and JOHN AND JANE DOES NOS.
1-10 are referred to as "Defendants."

## THE FACTS

60. Plaintiff SHARON LAFIA was a tenured teacher employed by
the New York City Department of Education at I.S. 171
Abraham Lincoln District # 19 at 528 Ridgewood Avenue,
Brooklyn, New York.

61. Plaintiff SHARON LAFIA has over two decades of unblemished
work experience with NYC and NYC DOE.

62. Complaining Parents made complaints to Defendants, and
were conveyed by Plaintiff SHARON LAFIA as a mandatory
reporter for which PRINCIPAL INDIRA MOTA received.

63. Defendants, individually and collectively, worked together to
deprive Plaintiff of her constitutional rights, to intentionally
discriminate and/or endorse intentional discrimination, while
failing to address unlawful behavior having the duty to do so
to prevent harm to SHARON LAFIA and the students of the
Complaining Parents.

64. Prior to being represented by independent counsel, SHARON
LAFIA was purportedly represented by the United Federation
of Teachers which collective bargaining representative
simultaneously represented Defendant JEFFREY EUSTACHE.

65. Defendants, individually and collectively, knew that Plaintiff
did not engage in any wrongdoing or illegality, nor did
Plaintiff engage in any behavior as alleged by Defendants
NYC, its agents and employees, New York City, Board of

Education of the City School District of the City of New York, a/k/a The New York City Department of Education, JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA, LINDSAY CICILLINI, and NEW YORK CITY LAW DEPARTMENT, with FORMER NEW YORK CITY LAW DEPARTMENT ATTORNEY BRITTNEY JORDAN FINDER, ESQ. and John and Jane Does Nos. 1-10 or any of its respective agents or employees.

66. Prior to the filing of her NYSDHR Complaint, Litigation Hold Notice, Freedom of Information Law ("FOIL") Requests and her Notice of Claim against NYCDOE, the Ms. LaFia reported the behavior(s) of JEFFREY EUSTACHE and, through the means as set forth by her union and as set forth by the NYC/DOE.

67. Plaintiff was required to report JEFFREY EUSTACHE insofar as his behavior towards children, tardiness and other matters were mandated by Defendants NYC, DOE and PRINCIPAL INDIRA MOTA.

68. Defendants NYC, DOE and PRINCIPAL INDIRA MOTA knew that Complaining Parents complained about JEFFREY EUSTACHE harassing and physically abusing children that were in Plaintiff's classroom.

69. Plaintiff describes this behavior in her affidavit submitted in *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: https://bit.ly/3qAh3LO, and incorporates the affidavit fully to this complaint as she was not responsible for JEFFREY EUSTACHE's write ups. *Id.* at ¶¶ 4-7.

70. JEFFREY EUSTACHE fabricated the allegations against Plaintiff to retaliate against her for her participation in and compliance with my employer's various requests for

information regarding his conduct as a paraprofessional and his treatment of special education students. *Id.* at ¶¶ 12-20.

71. Sharon LaFia reported not only discrimination and retaliation at the hands of I.S. 171 PRINCIPAL INDIRA MOTA and JEFFREY EUSTACHE (who filed a 2.5 Million dollar lawsuit against her in 2019[1]) but the physical threats, assault and physical abuse of the children by JEFFREY EUSTACHE and reported to her by Complaining Parents for whom she was responsible as a mandated reporter.

72. NYC/NYC DOE Defendants allegedly accepted service of process of *Eustache v. Board of Education et al*, *id.,* on behalf of SHARON LAFIA.

73. After NYC/NYC DOE Defendants claimed they represented SHARON LAFIA, NYC, Law Dep't and Defendant Finder did copy Plaintiff's cellular phone before stating she would not represent Plaintiff SHARON LAFIA.

74. NYC, Law Dep't and Defendant Finder acted under color of state law when they approached SHARON LAFIA at her job during working hours.

75. NYC, Law Dep't and Defendant Finder stated that they represented NYC and DOE to SHARON LAFIA.

76. As incorporated fully herein, *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: https://bit.ly/3qAh3LO, ¶¶ 53-78, establishes that SHARON LAFIA was "never informed by Finder that the New York City Law Department would not

---

[1] *Jeffrey Eustache v. Board of Education of the City School District of the City of New York et al*, Index No. 153619/2019, docket available at https://bit.ly/3xmuuTr, appeal not yet perfected under Appellate Division, First Department, Docket No. 2022-01128, available at https://bit.ly/3BFnaF6.

be providing [SHARON LAFIA] with legal representation with respect to Eustache's civil suit."

77. Starting February 2018 and continuing to date, Plaintiff was then wrongfully targeted on the basis of her color/race, sex and/or gender, summarily punished, subject to false complaints, including but not limited to a purported investigation without legal justification, by, *inter alia,* NYC and DOE, as discussed in Plaintiff's complaint filed in the NYSDHR and incorporated fully herein. See *supra,* ¶ 25.

78. False complaints were filed by JEFFREY EUSTACHE against Plaintiff.

79. Upon information and belief, LINDSAY CICILLINI, who was also named in these complaints, conspired with JEFFREY EUSTACHE and PRINCIPAL INDIRA MOTA to harm Plaintiff while benefiting themselves.

80. NYC, NYC Law Dep't. and Finder, upon information and belief, did work with LINDSAY CICILLINI and PRINCIPAL INDIRA MOTA, among others, to inculpate Plaintiff SHARON LAFIA in the lawsuit filed by JEFFREY EUSTACHE while simultaneously exonerate DOE, LINDSAY CICILLINI and PRINCIPAL INDIRA MOTA.

81. Defendants attempted to make Plaintiff SHARON LAFIA the scapegoat in the litigation filed by JEFFREY EUSTACHE.

82. LINDSAY CICILLINI who was known to have taken other I.S. 171 employees' phones, made inappropriate and sexually harassing comments to JEFFREY EUSTACHE using Plaintiff's phone. See *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: https://bit.ly/3qAh3LO, ¶¶ 31-32, 68

83. Knowing this, NYC, DOE and PRINCIPAL INDIRA MOTA used evidence and testimony it knew and had reason to know was false against Plaintiff to create charges and allegations against her that would stifle her career and subject her to formal charges as a tenured teacher on the basis of her sex/gender, race, color and national origin.

84. NYC, DOE and PRINCIPAL INDIRA MOTA knew and had reason to know Plaintiff did not engage in any wrongdoing but that JEFFREY EUSTACHE used Plaintiff to shield himself from his wrongdoings, which included harming students, viewing pornographic material at school and tardiness.

85. NYC, DOE and PRINCIPAL INDIRA MOTA knew and had reason to know Plaintiff stated that CICILLINI created text messages to JEFFREY EUSTACHE and that Plaintiff never gave CICILLINI permission to harass or sexually harass Mr. Eustache as per her Notice of Claim, incorporated fully herein. See *supra* ¶ 22.

86. NYC, DOE, NYC Law Dep't. and PRINCIPAL INDIRA MOTA knew and had reason to know Plaintiff was the victim of a fraud perpetrated by CICILLINI, JEFFREY EUSTACHE and, perhaps others.

87. Plaintiff SHARON LAFIA undertook herculean efforts to seek to clear her name for which she provided sworn statements in *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: https://bit.ly/3qAh3LO, that are incorporated fully herein.

88. Plaintiff cooperated with NYC and DOE at every stage of their purported investigation and was repeatedly assured by NYC and DOE, by and through PRINCIPAL INDIRA MOTA not to

worry about Defendant JEFFREY EUSTACHE's lawsuit or her representation in the same throughout 2018.

89. PRINCIPAL INDIRA MOTA provided false assurances to Plaintiff all the while creating and maintaining a Hostile Education Environment where Plaintiff would continue to be subject to harassment.

90. PRINCIPAL INDIRA MOTA provided false assurances to Complaining Parents who had students in Plaintiff's classroom all the while creating and maintaining a Hostile Education environment.

91. For example, although Plaintiff reported she was in fear of JEFFREY EUSTACHE due to violence, false allegations and a lawsuit filed against her, on or about December 2, 2019, PRINCIPAL INDIRA MOTA required Plaintiff to meet with her on or about December 4, 2019, to state she was insubordinate because she refused to go on a school trip with JEFFREY EUSTACHE.

92. After she claimed Plaintiff harassed JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA required Plaintiff to be in the same classroom with JEFFREY EUSTACHE.

93. On or about December 6, 2019, PRINCIPAL INDIRA MOTA made another allegation of professional misconduct against me stating that Plaintiff was harassing JEFFREY EUSTACHE after Plaintiff reported that she felt uncomfortable being placed in the same class as him, was the subject of false complaints, a multimillion dollar lawsuit, and that Complaining Parents were ignored concerning JEFFREY EUSTACHE's harassment of students, their children..

94. After she claimed Plaintiff harassed JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA still required Plaintiff to be in the same classroom with JEFFREY EUSTACHE to create and foster a Hostile Education and Hostile Work Environment.

95. Plaintiff sought to remove herself from JEFFREY EUSTACHE yet PRINCIPAL INDIRA MOTA still required Plaintiff to be in the same classroom with JEFFREY EUSTACHE although Plaintiff said she was uncomfortable around him, that she had panic attacks and high anxiety because of him.

96. On or about November 15, 2019, Plaintiff was forced to leave work early to see her doctor who advised her to stay out some days and sent a doctor's note to PRINCIPAL INDIRA MOTA.

97. PRINCIPAL INDIRA MOTA ignored Plaintiff's medical condition and Plaintiff's specialist, Doctor Tufano, had typed a letter for her to present to PRINCIPAL INDIRA MOTA.

98. Plaintiff provided proof that she was unable to commit the offenses of which she was initially accused, explaining that she was driving when another co-teacher had access to her cellular phone, mobile device, Defendant LINDSAY CICILLINI.

99. Rather than punish, admonish or conduct a fair and impartial investigation Defendants did continue to investigate, punish, admonish and transfer SHARON LAFIA, a white-female teacher while failing to punish Defendant JEFFREY EUSTACHE, a black male with , among other things, parent allegations against him.

100. PRINCIPAL INDIRA MOTA did, in response to Plaintiff's complaints, retaliate against Plaintiff.

101. On or about December 17, 2019, Plaintiff was denied her first step grievance for PRINCIPAL INDIRA MOTA filing false allegations.

102. Plaintiff was forced to file a step 2 grievance and PRINCIPAL INDIRA MOTA had forced Plaintiff to be excused from the meeting when PRINCIPAL INDIRA MOTA was questioned about where she submitted these complaints concerning JEFFREY EUSTACHE.

103. Eventually, on Jan. 6, 2020, Plaintiff succeeded in her grievance and the false, defamatory and maliciously filed charges by PRINCIPAL INDIRA MOTA were removed from Plaintiff's work file.

104. In tandem to these events, NYC Defendants and Law Dep't claim and represent in *Eustache v. City of New York, et al.*, Index No. 153619/2019 that JEFFREY EUSTACHE was responsible for a great many wrongdoings in response to his civil lawsuit yet failed to indemnify Plaintiff SHARON LAFIA, or provide fair representation of her without conflict or represent to claimant their true interests.

105. NYC Defendants claimed to accept service on behalf of Plaintiff but claim later that they did not represent her.

106. NYC Defendants withheld the lawsuit from Plaintiff and purported to represent her interests as statutorily required.

107. From the copying of the Plaintiff's cellular phone to the failure to allow for service and representation of Claimant, NYC and Law Dep't's collective actions were taken to harm and damage Plaintiff in furtherance of discrimination and

maintenance of a hostile education environment and a hostile work environment.

108. Plaintiff is a white female teacher who was not treated similar to other teachers on the basis of her race, color, sex and/or gender.

109. Defendants NEW YORK CITY, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION, AND PRINCIPAL INDIRA MOTA continued to place Plaintiff in a hostile working and educational environment by continuing to place in her classroom her false accuser, Defendant JEFFREY EUSTACHE, a much larger black/African American male who engaged in physical violence with special education students knowing and having reason to know that complaints existed from parents, students, teachers and others against JEFFREY EUSTACHE.

110. Plaintiff did make complaints that JEFFREY EUSTACHE was retaliating against her, discriminating against her and in response to those complaints, Defendant PRINCIPAL INDIRA MOTA did continue to punish Plaintiff and retaliate against her.

111. Plaintiff was defamed, stigmatized and her ability to apply for educational benefits, advancement, was hampered by the false allegations made by Defendant JEFFREY EUSTACHE.

112. Plaintiff was threatened with termination and the subject of several false write-ups over the two months that followed her complaints of mistreatment to NYC, DOE and Mota.

113. A grievance was filed by Plaintiff over misconduct by Mota and resolved in Plaintiff's favor before Plaintiff was removed from I.S. 171.

114. Complaining Parents were summarily ignored and overlooked by the alleged investigation conducted by NYC, NYC DOE and Mota into alleged discrimination, sexual harassment, retaliation and misconduct by persons working for NYC DOE.

115. In response, ignoring Plaintiff and Complaining Parents, Defendants, individually and collectively, did maliciously create, pursue, charge and issue process related to false allegations against Plaintiff.

116. There was no basis for the Defendants, filing the following charges, specifications against Plaintiff:

"**Sharon LaFia** …under File #0752503, is a tenured teacher assigned to Abraham Lincoln Intermediate School (I.S. 171) within District 19. During the 2018-2019 school year, Respondent engaged in sexual misconduct, harassment, racial discrimination, sexual harassment, inappropriate comments, and conduct unbecoming her position as follows:

**SPECIFICATION 1:** On or about February 2018, Respondent sent a text message
to paraprofessional Jeffrey Eustache stating in sum and substance that she and Mr.
Eustache could have sex and/or engage in other acts of a sexual nature.

**SPECIFICATION 2:** On or about March 2018, Respondent sent a text message to
paraprofessional Jeffrey Eustache, an African American man asking in sum and
substance is your penis big.

**SPECIFICATION 3:** On or about March 2018, Respondent sent a text message to
paraprofessional Jeffrey Eustache stating in sum and substance:
(A) My black lover, who was here today.
(B) What the hell you're flirting with black man.

**SPECIFICATION 4:** On or about and between March 2018 and April 2018,
Respondent stated to paraprofessional Jeffrey Eustache in sum and substance:
(A) My son thinks he's black.
(B) My son is out of control.
(C) My son smokes pot.
(D) My son's pants hang low.

**SPECIFICATION 5:** On or about and between March 2018 and April 2018,
Respondent asked paraprofessional Jeffrey Eustache in sum and substance in the
presence of students to share with the class his stories on how tough it was growing up
being poor and/or on food stamps.

**SPECIFICATION 6:** On or about and between March 2018 and April 2018,
Respondent attempted to sit on and/or touched paraprofessional Jeffrey Eustache's lap
during class in the presence of students causing students to laugh.

**SPECIFICATION 7**: As a result of some or all of the misconduct described in Specifications 1-6, Respondent created a hostile, offensive and/or intimidating working environment.
The foregoing constitutes:
- Just cause for discipline under Education Law §3020-a;
- Sexual misconduct;
- Conduct unbecoming Respondent's position or conduct prejudicial to the good order, efficiency, or discipline of the service;

- A violation of the by-laws, rules and regulations of the Chancellor, Department, School and/or District;
- Sexual harassment;
- Harassment;
- Misconduct;
- Racial discrimination;
- Inappropriate comments;
- Substantial cause that renders Respondent unfit to perform his obligations properly to the service; and
- Just cause for termination."

117. Defendants, individually and collectively, sought to terminate Plaintiff albeit this was the first instance of misconduct.

118. Plaintiff, after filing a Litigation Hold Notice, FOIL Requests and a NYSDHR complaint, received these charges.

119. After Plaintiff instructed Complaining Parents to speak to PRINCIPAL INDIRA MOTA were such charges brought.

120. Plaintiff, after filing a Litigation Hold Notice, FOIL Requests and a NYSDHR complaint, winning her grievance and complaining that PRINCIPAL INDIRA MOTA kept JEFFREY EUSTACHE in her class after she suffered panic attacks, Plaintiff was transferred out of I.S. 171, a clear act of retaliation.

121. The Plaintiff was defamed by NEW YORK CITY, its agents and employees, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, A/K/A THE NEW YORK CITY DEPARTMENT OF EDUCATION, its agents and employees, JOHN AND JANE DOES # 1-10,

122. That by reason of the actions of the Defendants, individually and/or collectively, jointly and/or severally, Plaintiff SHARON LAFIA was deprived of her ability to maintain her

employment, advance in her career, cope with the pending false allegations, and obtain indemnification, fair and conflict free representation, all of which impacted her ability to earn income.

123. Defendants NYC, Law Dep't. and Finder subjected Plaintiff to invasive examinations (*Riley v. California*, 134 S. Ct. 2473, 573 U.S. 373, 189 L. Ed. 2d 430 (2014)) causing her significant emotional distress by violating her right to be free from, among other things, unlawful search and seizure.

124. Plaintiff was seized at her place of employment, charged with false allegations, and forced to endure continuous interrogations and bias investigations at the hands of the Defendants.

125. As a result of actions by Defendants, individually and/or collectively, jointly and/or severally, Plaintiff has been forced to obtain medical care and treatment.

126. Defendants NYC Defendants and DOE Defendants its agents and employees, made the foregoing accusations knowing or having reason to know that no probable cause existed against the Plaintiff and that such allegations were defamatory and slanderous.

127. Defendants knew that Defendant JEFFREY EUSTACHE created the complaint against Plaintiff only after he was subject to various accusations of misconduct by parents and others.

128. Defendants, all of them, knew and had reason to know that no probable cause existed for the charges proferred against the Plaintiff, and, thereafter, became aware that no probable cause existed for continued prosecution.

129. Nevertheless, Defendants continued to prosecute Plaintiff under New York Education Law § 3020-a and, as a result claimant suffered through the continued hardship and humiliation of defending herself in both Court and administratively which caused and is causing Plaintiff great emotional distress.

130. Plaintiff submits that these proceedings were commenced with malice and, upon information and belief, against the Plaintiff on, *inter alia*, the basis of her color, race and/or sex/gender rather than address the legitimate concerns of staff and Complaining Parents.

131. Defendant JEFFREY EUSTACHE, a black male, did not suffer transfer after allegations of physical violence against special education students were made by Complaining Parents against Defendant JEFFREY EUSTACHE.

132. Defendant JEFFREY EUSTACHE, a black male, did not suffer transfer or 3020-a charges after allegations were made that he was viewing pornography while working in a special needs classroom.

133. Defendant JEFFREY EUSTACHE, a black male, did not suffer transfer or 3020-a charges after allegations were made that he came in smelling of marijuana and continued to use multiple phones in the classroom.

134. *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: https://bit.ly/3qAh3LO, establishes that Plaintiff was not responsible for JEFFREY EUSTACHE's write ups. *Id.* at ¶¶ 4-7.

135. Plaintiff was treated poorly, subject to retaliation and discrimination at the insistence of Defendant JEFFREY EUSTACHE and with the cooperation of NYC and DOE Defendants who used Defendant JEFFREY EUSTACHE's false allegations to further punish Plaintiff, a white female teacher.

### PREFERENTIAL TREATMENT ON THE BASIS OF SEX/GENDER AND/OR RACE/COLOR

136. Plaintiff is a white female special education teacher.

137. Plaintiff made complaints about Defendant JEFFREY EUSTACHE'S behavior, complaints substantiated by several parents, and for whom parents of her students spoke out to Defendant Mota about Defendant JEFFREY EUSTACHE'S physical altercations with special education students.

138. These complaints, almost all by parents, accumulated throughout 2018 up and until today.

139. Since Defendant JEFFREY EUSTACHE started working for the NYC/DOE, Plaintiff and others were required to document Mr. Eustache's work transgressions of phone usage, leaving the room unattended, absence and not following directions.

140. Defendant Mota knew of EUSTACHE'S behavior yet did not reprimand him for absences, but did reprimand Ms. LaFia albeit LaFia had doctor's notes for her absences.

141. As Plaintiff sought disciplinary records through FOIL, Plaintiff reported to Mota that Defendant JEFFREY EUSTACHE'S behavior transcended minor transgressions yet Defendant Mota refused to investigate Defendant JEFFREY EUSTACHE, a black/African American male, and proceeded to cover-up his wrongdoings and harm Plaintiff SHARON LAFIA,

a white/Caucasian female, while allowing Defendant JEFFREY EUSTACHE to, among other things, physically threaten special education students at I.S. 171.

142. Parents complained to Ms. Mota about Defendant JEFFREY EUSTACHE.

143. Ms. LaFia complained of discrimination, retaliation and reported harassment and bullying of children in 2018, 2019 and well before the filing of her complaint of discrimination and retaliation with the NYSDHR.

144. Parents of children, too, made complaints to NYC/DOE and Defendant Mota on Plaintiff's behalf.

145. Plaintiff confirmed what these parents were saying – preferential treatment, harassment and discrimination against Plaintiff for doing her job by NYC and DOE

146. NYC and DOE ignored the verbal complaints, memorialized by Mota and Plaintiff's union, and written complaints which not only shows the lengths to which NYCDOE and Defendant Mota went to protect Defendant JEFFREY EUSTACHE, a black/African American male in order to remove white/Caucasian CICILLINI and Ms. LAFIA.

147. Ms. LaFia worked for the NYCDOE over twenty years and was purportedly represented by the United Federation of Teachers ("UFT") to which she had paid dues continuously throughout that period.

148. Nevertheless, the UFT also and simultaneously represented Defendants JEFFREY EUSTACHE, PRINCIPAL INDIRA MOTA, and/or LINDSAY CICILLINI when Defendant JEFFREY EUSTACHE purportedly filed a notice of claim and lawsuit

against Ms. LaFia in 2019. See *Jeffrey Eustache v. Sharon Lafia & NYC BOE*, NY Supreme Ct, Index No. 153619/2019.

149. With the significant number of students, parents and teachers complaining about Defendant JEFFREY EUSTACHE, together with the various reprimands and reasons that Defendants gave in support of their motion to dismiss Mr. Eustache's lawsuit (*id.* at NYCEF Doc No. 8), NYC and DOE cannot claim ignorance of those complaints.

150. Prior to November, 2019, Plaintiff made complaints to Mota in the presence of UFT representatives that she was being harassed, discriminated against and suffering retaliation for reporting Defendant JEFFREY EUSTACHE.

151. Plaintiff complained of a Hostile Education/Work Environment.

152. Complaining Parents submitted complaints that their children were subject to harassment and physical violence.

153. Plaintiff stated to Defendant Mota that there was an open lawsuit and that she should not be placed with this larger, aggressive, man who accused her of sexual harassment. Nevertheless, Defendant Mota placed Defendant JEFFREY EUSTACHE back in Ms. LaFia's classroom.

154. Plaintiff complained to Defendant DOE, Mota and others she was being retaliated against for, *inter alia,* her cooperation in an investigation of Mr. Eustache as soon as Mr. Eustache was placed back in her classroom. At that time, Defendant Eustache was maintaining a 2.5 million dollar lawsuit against Ms. LaFia.

155. In response to placing Defendant JEFFREY EUSTACHE back into Plaintiff's classroom, after all the above allegations, Defendant Mota stated, in response, that she could not accommodate Plaintiff SHARON LAFIA.

### RETALIATION AGAINST LAFIA AND PLACING JEFFREY EUSTACHE BACK IN HER CLASSROOM WHEN HE FILED A 2.5 MILLION DOLLAR LAWSUIT AGAINST SHARON LAFIA

156. Ms. LaFia stated unequivocally, in the months leading up to the string of write-ups that Ms. Mota manufactured in the last months of 2019 that she was the subject of retaliation for complaining and demanding explanations for her differential treatment as to Defendant EUSTACHE.

157. When Defendant JEFFREY EUSTACHE was placed in Plaintiff's class room, LAFIA told Mota that Defendant JEFFREY EUSTACHE was previously in an "ICT" class and that Eustache should not have further opportunity to defame, slander and hurt Plaintiff who was simply doing her job: reporting misconduct and the abuse of special education children.

158. In addition to stating to Defendant Mota that she was being harassed and falsely accused, Plaintiff stated to Mota that she felt unsafe, discriminated against, intimated physically and verbally by threats of removal and being terminated after over twenty years of working without a single complaint. Ms. Mota ignored Ms. LaFia's pleas.

159. As soon as Ms. LaFia became aware that Principal Indira Mota was ignoring her complaints of discrimination, retaliation and mandatory reporting requirements as to Jeffrey Eustache, grievances were filed by the Union and the

Notice of Claim memorialized the 90 days and two years previous where NYC and DOE individually and through PRINCIPAL INDIRA MOTA served several false allegations, notices of discipline and refusal to accept Ms. LaFia's formal charges of discrimination and retaliation.

160. After a litigation hold notice was filed by SHARON LaFIA, Defendant Mota responded with write-ups.

161. As Plaintiff became increasingly vocal in her complaints, Ms. Mota responded by escalating the write-ups that culminated in the threat of removal and institution of formal charges against Plaintiff.

162. Ms. Mota removed Plaintiff from I.S. 171, interfered with her opportunities to earn additional income, attend seminars, and advance her career.

163. When Plaintiff complained of discrimination, Defendant Mota covered it up.

164. When Complaining Parents complained of harassment, physical abuse and various other grievances against JEFFREY EUSTACHE Plaintiff, not the perpetrator of these acts, would be subject to false discipline, write-ups, and placed in uncomfortable if not physically threatening conditions in the workplace.

165. Plaintiff was not seeking an accommodation – she was complaining of discrimination and retaliation.

166. NYC DOE and Defendant Mota stood by while the inherent conflict of interest existed in UFT.

167. NYC, DOE and Mota claim complete ignorance to any claim of discrimination in both Plaintiff and, ironically, Defendant JEFFREY EUSTACHE complaints over placing both of them in the same classroom during the pendency of Defendant JEFFREY EUSTACHE'S lawsuit.

168. Defendant Mota ignored the fact that Plaintiff was forced to take-off sick, an adverse employment action when Defendant Mota placed Defendant Eustache in Ms. LaFia's classroom.

## RETALIATION AND PRETEXT: PLAINTIFF'S HEARING AND DUE PROCESS DEPRIVATIONS

169. Plaintiff is a white/Caucasian female who was not treated similar to other employees, particularly Defendant JEFFREY EUSTACHE, on the basis of her race, color, sex and/or gender.

170. NYCDOE individually and through Principal Indira Mota continued to place Ms. LaFia in a Hostile Working Environment and created a Hostile Educational Environment; to wit, Plaintiff was placed with her false accuser, Defendant Eustache, a much larger black/African American male who engaged in physical violence with special education students knowing and having reason to know that complaints existed from parents, students, teachers.

171. Rather than discipline Defendant JEFFREY EUSTACHE, a paraprofessional,. Mota focused her efforts on removing Plaintiff LaFia, pursuing the false charges to a hearing where Plaintiff was denied access to exculpatory evidence.

172. NYC Defendants and DOE Defendants sought to terminate Plaintiff based on the above specifications in *NYCDOE v. LaFia SED No. 36157 3020-a* yet did not seek any similar

discipline for Defendant JEFFREY EUSTACHE for the various transgressions Defendants admit occurred including physical violence towards special education students thus, evidencing both preferential treatment for Defendant Eustace and discrimination against Plaintiff LaFia on the basis of race, color, sex/gender.

173. Plaintiff complained of the discrimination, harassment, and bullying by Defendant JEFFREY EUSTACHE and Defendant Mota and NYC/DOE filed false sexual harassment charges after Ms. LaFia complained, filed Litigation Hold Notices and Freedom of Information Law Requests.

174. NYCDOE is withholding records that would exonerate Ms. LaFia. See *Trawinski v. Jabir & Farag Props., LLC*, 154 A.D.3d 991 (2d Dept. 2017).

175. Once the above notice of claim was filed, Plaintiff was quickly removed from her position at I.S. 171 together with all opportunity for meaningful advancement after twenty years of dedicated service.

176. The NYC DOE findings and write-ups that preceded Plaintiff's removal are pretextual and retaliatory.

177. Plaintiff was forced to undergo a hearing where she was denied access to important evidence and where the findings were based on false evidence, demonstrably false testimony and without the opportunity to review or challenge the purported finding that Plaintiff sent text messages when she did not.

178. NYC and DOE continues to refuse to provide records or information to Ms. LaFia to which she is entitled while the

same Defendants manage to produce self serving records to defend itself in the following lawsuits that occur out of essentially the same facts:

- *LaFia v. City of New York*, NY Supreme Ct, Index No. 152739/2020;

- NYSDHR Complaint 10206338 *Sharon E. Lafia v City of New York, Department of Education*;

- Plaintiff's EEOC Cross-filed Complaint; and

- *Jeffrey Eustache v. Sharon Lafia & NYC BOE*, NY Supreme Ct, Index No. 153619/2019.

179. After the abovementioned hearing, a length decision issued with findings of fact that were based on false testimony, false evidence and the inability of Plaintiff to have an in person hearing to wit:

180. Witnesses in *NYCDOE v. LaFia SED No. 36157 3020-a* were, upon information and belief, coached if not guided to ensure that Plaintiff would be found guilty of false charges.

181. Plaintiff was forced to comply with a virtual hearing, spread over months and multiple days that did violate Plaintiff's substantive and procedural due process rights.

182. As a result of the hearing, Plaintiff was found guilty of some specifications but not terminated from her post.

183. Plaintiff suffered adverse employment actions not limited to pecuniary emoluments, removal from I.S. 171, the inability to obtain overtime hours, advance in her career or remove herself from the Hostile Education Environment in which she was placed.

184. Plaintiff suffered materially adverse change in the terms and conditions of employment on the basis of her race, color, sex/gender especially when compared with Defendant JEFFREY EUSTACHE.

185. Plaintiff was threatened and Defendants sought a termination of employment.

186. Plaintiff suffered demotions, a less distinguished title, a material loss of benefits and is, currently, being placed out of her job function, a special education teacher, after over two decades of distinguished service.

### THE CONTINUED PERSECUTION OF SHARON LaFIA

187. After being placed in the infamous NYC DOE "rubber room", Plaintiff was told she would eventually return to I.S. 171, but that was not true.

188. NYC and DOE continued to punish Plaintiff in the failure to provide her appropriate placement or honor her requests or complaints against Defendant JEFFREY EUSTACHE that were uncovered and confirmed in *NYCDOE v. LaFia SED No. 36157 3020-a* by sworn testimony.

189. Plaintiff, as of late, made clear to her employers NYC and DOE, that her daughter was suffering from a debilitating cancer and that she needed to exercise her rights under New York State/New York City and Federal Family Medical Leave Act (collectively referred to herein as "FMLA").

190. Plaintiff's request for FMLA was ignored.

191. When Plaintiff claimed she was being treated worse than male employees, Plaintiff was then told by NYC and DOE

Defendants that she would be forced to comply with a placement.

192. Plaintiff suffered and continued to suffer in a Hostile Education Environment first created by Defendant Mota and continued by Defendants, individually and collectively.

193. After Plaintiff complained of FMLA discrimination, NYC and DOE did then state that Plaintiff's placement would not be in I.S. 171 but would be in another neighborhood.

194. After Plaintiff complained of FMLA discrimination, NYC and DOE did then state that Plaintiff's placement would not be as a special education teacher but would an out-of-title and thus diminished position.

195. All the while, Defendant MOTA and Defendant EUSTACHE remain at I.S. 171 while Plaintiff LaFia, a tenured white, female teacher has been removed from her post at the school.

## 42 U.S.C. §§ 2000A, 2000-D: CIVIL RIGHTS ACT TITLE VI, HOSTILE EDUCATION ENVIRONMENT AND HOSTILE WORK ENVIRONMENT

196. Plaintiff SHARON LAFIA complained that Defendant JEFFREY EUSTACHE's conduct, behavior and physical aggression towards special education students was so egregiously outrageous and profoundly threatening as to establish prima facie severe and discriminatory harassment.

197. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of Defendant JEFFREY EUSTACHE's conduct evidences the preferential treatment of for black males over female white teachers, such as the Plaintiff.

198. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of Defendant JEFFREY EUSTACHE's physical aggression show the lengths Defendants, individually and collectively, went to harm Plaintiff, a white/female tenured teacher without any disciplinary history and shield Defendant EUSTACHE from wrongdoing albeit DOE and Defendant Mota are required to report such wrongdoings by law.

199. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the Hostile Education and Hostile Work Environment evidence that discrimination was intentional.

200. Discrimination was a substantial or motivating factor for the failure of the Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of DOE Defendants upon the civil rights and liberty interests of Plaintiff Sharon LaFia.

201. Defendants, individually and/or collectively, jointly and/or severally, by their failure to take action to prevent or remediate or address Plaintiff SHARON LAFIA'S complaints or Defendant JEFFREY EUSTACHE's behavior endorsed and ignored by Defendant Mota have created a racially discriminatory environment and school environment hostile to the special education students taught by Plaintiff LaFia.

202. Defendant NYC and NYC DOE has demonstrated and continues to demonstrate patterns of racial/ethnic disproportionality in disciplinary actions in I.S. 171 and, upon information and belief, other schools.

203. That the Defendants, individually and/or collectively, jointly and/or severally, were deliberately indifferent to the harassment, retaliation, discrimination against and complaints by Plaintiff LaFia.

204. That the attack upon the civil rights and liberty interests of Plaintiff SHARON LAFIA was so egregiously outrageous and profoundly threatening as to establish prima facie severe and discriminatory harassment.

205. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the various civil rights violations and false accusations resulting in defamatory stigma to Plaintiff SHARON LAFIA has created a profoundly discriminatory work environment for Plaintiff Sharon LaFia and a hostile educational environment for the special education students shew teaches.

206. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the Hostile Work/Education Environment, physical and mental threats, abuse of process and threats of process, deprived the Plaintiff of a work environment free of discrimination and retaliation and her students access to the educational opportunities or benefits of NYC and NYC DOE.

207. The failure of Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of the attack upon the civil rights and liberty interests of Plaintiff Sharon LaFia clearly evidences discrimination against her on the basis of race, gender and

sex, that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the failure of the Defendants, individually and/or collectively, jointly and/or severally, to take action to prevent or remediate the effects of attack upon the civil rights and liberty interests of Plaintiff, her students and her co-workers.

208. Defendants, individually and/or collectively, jointly and/or severally, by their failure to take action to prevent or remediate the attack upon the civil rights and liberty interests of Plaintiff SHARON LAFIA, have created a racially discriminatory environment and school environment hostile to a white, Caucasian female persons such as Plaintiff SHARON LAFIA, and which effectively deprived her of the ability to teach her students, obtain advancements in her career, and be free of an work/education environment riddled with threats, aggression, discrimination and retaliation.

209. Defendants NYC and NYC DOE demonstrated and continues to demonstrate patterns of racial/ethnic disproportionality in disciplinary actions, and racial preferences and tolerance for illegal behaviors while minor transgressions by persons such as Sharon LaFia, a white/Caucasian, Female, employee are treated harshly, the accused discredited and deprived of meaningful access to union representation and counsel.

210. That by publicly claiming that it accepts any and all students without discrimination or segregation on the ground of race, color, religion, or national origin, Defendant DOE has assumed the status of a place of public accommodation subject to the provisions of 42 U.S.C.A. §2000a.

## FAMILY MEDICAL LEAVE ACT ("FMLA")
## DISCRIMINATION AND RETALIATION

(Family Medical Leave Act, 29 U.S.C. § 2601 et seq., and New York City
Human Rights Law, N.Y.C. Admin. Code § 8-107(7). )

211. Plaintiff SHARON LAFIA is an eligible employee under the FMLA.

212. Defendant is an employer as defined by the FMLA.

213. Plaintiff SHARON LAFIA was entitled to take leave under the FMLA.

214. Plaintiff SHARON LAFIA gave notice to the defendant of her intention to take leave.

215. Plaintiff SHARON LAFIA was denied benefits to which [s]he was entitled under the FMLA.

216. On or about June 28, 2022, Plaintiff SHARON LAFIA received an email reassignment staff stating that she will be notified on where to report in September.

217. While, on or about, August 30, 2022, all the male reassignment teachers received an email where to report on September 1, 2022, Plaintiff SHARON LAFIA did not get any information.

218. Plaintiff SHARON LAFIA was reassigned albeit she was seeking FMLA due to high anxiety and dealing with her under age daughter diagnosed with cancer.

219. Plaintiff SHARON LAFIA's FMLA took three weeks to be approved.

220. Plaintiff complained and was treated differently than other similarly situated persons.

221. Plaintiff SHARON LAFIA was treated differently than other male workers in that she had a family condition and required FMLA leave.

222. Plaintiff SHARON LAFIA was deprived of electronic mail notices, among other things, and suffered the loss of several compensated days because Defendants, individually and collectively, did refuse her the ability to go on FMLA leave.

223. Plaintiff SHARON LAFIA is a victim of FMLA retaliation.

224. Plaintiff SHARON LAFIA exercised rights protected under the FMLA, she was qualified for her position and suffered an adverse employment action that gave rise to circumstances giving rise to an inference of retaliatory intent.

225. Plaintiff exhausted all available means to her to obtain FMLA leave.

## JUDICIARY LAW, INVASION OF PRIVACY AND FOURTH AMENDMENT VIOLATIONS

226. Violations of the Judiciary Law occurred when NYC Defendants, specifically Brittney Jordan Finder on behalf of NYC, DOE and the New York City Law Department did demand Plaintiff's personal cellular phone.

227. NYC Defendants, specifically Brittney Jordan Finder on behalf of NYC, DOE and the New York City Law Department did search through such cellular phone and obtain evidence without a warrant.

228. NYC Defendants, specifically Brittney Jordan Finder on behalf of NYC, DOE and the New York City Law Department did search through Plaintiff's cellular phone and obtain evidence during working hours.

229. NYC Defendants, specifically Brittney Jordan Finder on behalf of NYC, DOE and the New York City Law Department did violate Plaintiff's rights and maintain a policy if not procedure of violating NYC employees' constitutional rights, specifically the right to be free from unreasonable search and seizure during NYC working hours.

230. Plaintiff demanded that such information be subject the above-mentioned litigation hold notice and demanded the production of such evidence by Freedom of Information Law Request to no avail.

231. NYC Defendants, specifically NYC, DOE and the New York City Law Department hired Defendant Finder and instructed Defendant Finder, equipped with an information technology expert, to copy Plaintiff's phone.

232. Defendants' actions violated the constitutional right(s) of Plaintiff and gives rise to ongoing New York State Judiciary Law violations inclusive of:

233. NYC Defendants, specifically Brittney Jordan Finder on behalf of NYC, DOE and the New York City Law Department did engage in constitutional violations and knew that the illegal obtaining of evidence and inability for Plaintiff to challenge the purported evidence would be utilized against her and resulted in, among other things, the due process violations discussed above and evidences in *NYCDOE v. LaFia SED No. 36157 3020-a.*

234. Defendants, jointly and severally, individually and collectively to inculpate Plaintiff, move Cicillini out of I.S. 171 and allow Plaintiff to suffer the various violations discussed

above (together with the Hostile Education Environment, placing the false accuser black her classroom) in refusing her evidence or allowing her to access the alleged phone records used against her in *NYCDOE v. LaFia SED No. 36157 3020-a*. See *New York City et al,* Index No. 152739/2020, Doc. No. 3, available at: [https://bit.ly/3qAh3LO,](https://bit.ly/3qAh3LO) ¶¶ 70-76.

### PLAINTIFF'S "MONELL" CLAIM; 42 U.S.C. §§ 1981, 1983, 1985 AND 1986

235. Plaintiff was an otherwise qualified female employee within I.S. 171, NYC and DOE.

236. Plaintiff suffered the adverse employment actions herein set forth and alleged.

237. Plaintiff has been damaged and remains damaged insofar as she is treated differently than others who are not white/Caucasian females.

238. Defendants, individually and collectively, did work together to deprive Plaintiff of her civil rights on the basis of race/color, sex/gender.

239. Plaintiff SHARON LAFIA was deprived of the ability to participate and obtain equal rights to engage in contractual relations and employment as other similarly situated black/male persons.

240. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions acted with intent to deprive Plaintiff of the ability to fairly contract with NYC and DOE on the basis of race/color, gender/sex.

241. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions

worked together to harm Plaintiff and others similarly situated, on the basis of race/color, gender/sex, to the benefit of those who were minority/male persons such as Defendant JEFFREY EUSTACHE.

242. Defendants NYC and DOE engaged in a policy, pattern and practice, custom, trade and/or usage of harming persons similarly situated to Plaintiff, that being white/Caucasian female persons, in their ability to enjoy the same benefits of employment, contract and other benefits of employment as compared to persons such as Defendant JEFFREY EUSTACHE, that being black/African American, male persons.

243. Through Defendants, individually and collectively, practices, intentional acts and/or omissions, Plaintiff has suffered harm.

244. Through Defendants, individually and collectively, practices, intentional acts and/or omissions, Plaintiff has been unable to help her students or address the concerns of Complaining Parents.

245. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions acted to harm Plaintiff and worked together to harm Plaintiff on the basis of her race/color sex and/or gender.

## DEFAMATION/SLANDER/STIGMA PLUS
### (New York and Federal Law)

246. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions stated Plaintiff was a sexual harasser when she was in fact not.

247. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions knew

and had reason to know that their actions, statements, publications and repetition that Plaintiff sexually harassed a male when she did not was a false statement.

248. Defendants, individually, collectively, jointly and severally falsely accused Sharon LaFia of sexual harassment, discrimination, illegality and the being unfit for her job duties.

249. Defendants have published this information both publicly, through administrative hearings and for the purpose of harassment on various court filings.

250. Defendants made a false statement about the plaintiff; published that false statement to a third party without authorization or privilege through fault amounting to at least negligence on the part of the publisher; and that false statement constitutes defamation which caused special damages

251. As a result of said defamation, Plaintiff Sharon LaFia continues to suffer from humiliation, loss of standing in the community, accusations that Plaintiff was unable to perform her job duties/be an educator, loss of self-esteem and public esteem, public disgrace and severe/extreme emotional distress.

252. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions repeated that Plaintiff, as cited above, was unfit for her job position.

253. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions

repeated that Plaintiff, as cited above, should be terminated from her job position.

254. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions knew and had reason to know that Plaintiff was innocent of wrongdoing professed by Defendant JEFFREY EUSTACHE.

255. Defendants, jointly and severally, individually and collectively, did perpetuate the fraud against Plaintiff while exonerating Defendant JEFFREY EUSTACHE who was, among other things, accused of physically harming special education students in Plaintiff's care.

256. Defendants, jointly and severally, individually and collectively, are responsible with the harm Plaintiff suffered, the actual, proximate and but-for cause of harm suffered by Plaintiff associated with being labelled a sexual deviant, engaging in sexual misconduct and making inappropriate advances towards an employee when she denies and is not guilty of any such wrongdoing.

## FEDERAL & PENDENT STATE LAW CLAIMS

257. Defendants, jointly and severally, individually and collectively, had a duty not to subject Plaintiff Sharon LaFia to constitutional violations, summary punishment, improper and inappropriate charges, false evidence, stigma malicious prosecution, abuse of process, false and improper investigation.

258. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions acted outrageously and beyond the bounds of decency in attempting

to coerce Plaintiff and defaming, slandering and failing to redress the grievances suffered by the Plaintiff.

259. Defendants, jointly and severally, individually and collectively, violated the Plaintiff's rights secured under the United States Constitution and the New York State Constitution.

## MALICIOUS PROSECUTION
(New York and Federal Law)

260. The actions of the Defendants, jointly and severally, individually and collectively, in prosecuting Sharon LaFia for *NYCDOE v. LaFia SED No. 36157 3020-a*, and are a perversion of proper legal procedures in violation of his personal liberty and privacy interests under the Fourth Amendment.

261. Defendants actions, as discussed above, were undertaken to punish Sharon LaFia for speaking out against discrimination.

262. Defendants, collectively, did act to punish Sharon LaFia, defame Sharon LaFia, harass and intimidate and seize Sharon LaFia by legal process, threat of fines and prosecution.

263. Defendant JEFFREY EUSTACHE's lawsuit was dismissed against SHARON LAFIA even though such Defendant through its attorneys persist in pursuing motion and motion, and prolong the appeal(s) against her simply to repeat the defamatory statements against SHARON LAFIA and harm her to no end.

264. The actions of the Defendants, jointly and severally, individually and collectively, in prosecuting SHARON LAFIA

were initiated or continued against her, with malice and without probable cause.

265. Plaintiff has suffered harm, stigma and damages to defend such legal matters that were without probable cause, based on false evidence, for which she was deprived of a fair trial and/or dismissed against her.

## DISCRIMINATION, HOSTILE WORK ENVIRONMENT & RETALIATION UNDER STATE AND FEDERAL LAW

(42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, New York State Human Rights Law and New York City Human Rights Law – Administrative Code of the City of New York, § 8-101 *et seq.*)

266. Defendants, individually and collectively, did make false allegations seeking to have Sharon LaFia charged and prosecuted.

267. Defendants, individually and collectively, did make these false accusations to injure Sharon LaFia, subject Sharon LaFia to seizure and/or arrest, prosecution and legal process.

268. As a result of the conspiracy (42 U.S.C. §§ 1983, 1985 and 1986) perpetrated by and contributed to by the Defendants, jointly and severally, individually and collectively, Sharon LaFia was forced to obtain representation from multiple attorneys, inclusive of Jesse Gribben, Esq. and the undersigned.

269. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions worked together to harm Plaintiff based on her race/color gender/sex knowing and having reason to know that their acts were without justification or that such justification was a falsehood by JEFFREY EUSTACHE to exonerate himself from the various misconduct he committed in I.S. 171.

270. Defendants actions were the actual and proximate cause of harm, embarrassment, accruing legal fees and other damages.

## New York State Executive Law § 296

271. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions acted to violate Plaintiff's rights under the New York State and New York City laws against, among other things, discrimination and retaliation.

## Abuse of Process
### (New York and Federal Law)

272. Defendant issued legal process to silence and punish Plaintiff for speaking out.

273. As discussed more fully above, Defendants, jointly and severally, individually and collectively, in order to obtain a collateral objective that is outside the legitimate ends of the process did cause a series of unfounded accusatory instruments to be issued against Plaintiff Sharon LaFia.

274. Defendants, jointly and severally, individually and collectively, intended to do harm and cause damage to Plaintiff Sharon LaFia and her family without justification.

## Negligence and Negligent Retention

275. Defendants, jointly and severally, individually and collectively, had a duty to act reasonably and responsibly and not to act in a manner that would cause injury and/or harm or the threat of harm to the Plaintiff Sharon LaFia.

276. Defendants were negligent, careless, and reckless in the treatment of Plaintiff by failing to train, supervise, discipline and investigate its employees involved in the instant matter.

277. Defendants, inclusive of NYC and NYC DOE, knew or should have known of its employees' propensities for the conduct which caused substantial and severe injury to the Plaintiff.

278. Defendants, jointly and severally, individually and collectively, through their conduct, acts, and omissions acted in concert with NYC and DOE to retain employees that harmed New York City special education students while creating a hostile education/work environment in harming employees that provided proper care and education to the same students.

279. NYC and DOE jointly and severally, individually and collectively, through their conduct, acts, and omissions acted to harm qualified white/Caucasian female employees while retain unqualified minority/male employees irrespective of the misconduct of such employees, inclusive of JEFFREY EUSTACHE.

280. Defendants acted negligently in violating the civil, Constitutional, and human rights of the Plaintiff.

**NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

281. Defendants, individually and/or collectively, jointly and/or severally, acted outrageously and beyond the bounds of decency in violating the civil rights and liberty interests of the Plaintiff causing her to suffer pain, shame, humiliation and anguish.

282. The reprehensible, extreme and outrageous conduct of the Defendants, jointly and severally, individually and collectively, against Plaintiff occurred with intent and full knowledge that their conduct would cause severe and extreme emotional and psychological harm to Plaintiff.

283. Defendants did fail to investigate improper use of process, harassment and Hostile Education Environment but, rather, Defendants began to conspire and cover up such actions by prosecuting criminal charges and threatening Plaintiff with unjust fines, reprimand and punishment, threat of loss of job, job benefits, advancement and workplace environment.

284. The Defendants knew or had reason to know that Plaintiff Sharon LaFia was guilty of no wrongdoing.

285. Defendants, jointly and severally, individually and collectively, acted with knowledge and reason to know that their conduct would cause severe and extreme emotional and physical harm to Plaintiff.

## PRIMA FACIE TORT

286. Defendants, individually and/or collectively, jointly and/or severally, acted outrageously and beyond the bounds of decency in violating the civil rights and liberty interests of the Plaintiff Sharon LaFia causing her to suffer pain, shame, humiliation and anguish.

287. Defendants, individually and/or collectively, jointly and/or severally acted to intentionally inflict of harm upon Plaintiff.

288. Defendants, individually and/or collectively, jointly and/or severally caused Plaintiff special damages as evidenced by

Plaintiff's mental distress and other harms she provided documentation to NYC and DOE to, among other things show mental distress associated with Defendants; action.

289. Defendants, individually and/or collectively, jointly and/or severally acted without excuse or justification, such as placing Plaintiff with her false accuser and not removing an employee who was accused of being physically violent with special education students from NYC/DOE.

290. The reprehensible, extreme and outrageous conduct of the Defendants, jointly and severally, individually and collectively, against Plaintiff occurred with intent and full knowledge that their conduct would cause severe and extreme emotional and psychological harm to the Plaintiff.

## INJURIES AND DAMAGES

291. As a direct and proximate result of the wrongful actions and inappropriate lack of action by the Defendants, jointly and severally, individually and collectively, Plaintiff Sharon LaFia has suffered injury and damages, emotional and psychological harm, emotional injury, distress and pain, and incurred significant cost and expenses, including but not limited to legal fees, loss of good name and standing in the community, public stigma, personal humiliation, social degradation, and other costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SHARON LAFIA seeks judgment of this honorable Court:

DECLARING that Defendants jointly and severally, individually and collectively, maliciously prosecuted Plaintiff SHARON LAFIA.

DECLARING that the prosecution of Sharon LaFia for allegedly harassing, sexual harassment, JEFFREY EUSTACHE was malicious.

PROHIBITING NYC and NYC DOE from maintaining a Hostile Work Environment.

PROHIBITING NYC and NYC DOE from maintaining a Hostile Education Environment.

APPOINTING a federal monitor to observe, monitor, and retrain the Defendants in order to assure that jointly and severally, individually and collectively, said Defendants refrain from violating the civil and Constitutional rights of the Plaintiff and students for whom Plaintiff was responsible and JEFFREY EUSTACHE intimidated, bullied, harassed if not injured.

AWARDING Plaintiff compensatory, general, and punitive damages, costs, disbursements, and attorneys' fees from the Defendants.

All together with such other and further relief as to this Court shall deem just and proper.

DATED AT    Melville, New York
          October 6, 2022

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiff*
135 Pinelawn Road, Suite 250s
Melville NY 11747
Phone: (631) 450–2515
FAX: (631) 223–7377
Email: Cory.H.Morris@protonmail.com