UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARON LAFIA,

                              Plaintiff,

        -v-

NEW YORK CITY, et al.,

                              Defendants.

CIVIL ACTION NO. 22 Civ. 07925 (PGG) (RFT)

**REPORT AND RECOMMENDATION**

TO THE HONORABLE PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE:

In her Amended Complaint ("AC"), Plaintiff Sharon LaFia, a New York City public school

teacher, brings suit against Defendants New York City (the "City"); Board of Education of the

City School District of the City of New York a/k/a The New York City Department of Education

(the "DOE"); Jeffrey Eustache, a paraprofessional at her school; Indira Mota, the principal at her

school; Lindsay Cicillini, a teacher at her school; New York City Law Department (the "Law

Department");[1] Brittney Jordan Finder, a former Law Department attorney; and John and Jane

---

[1]        The New York City Charter provides that "[a]ll actions and proceedings for the recovery
of penalties for the violation of any law shall be brought in the name of the City of New York
and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter Ch. 17 §
396. Since the New York City Law Department is an agency of the City of New York, the City of
New York is the only appropriate Defendant for claims arising out of alleged improper acts by
the Law Department. *See Petyan v. New York City Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015
WL 4104841, at *2 (S.D.N.Y July 2, 2015) (noting that the Law Department is not a suable
entity). Accordingly, all claims against the New York City Law Department should be dismissed
with prejudice.

Does 1-10 (collectively, "Defendants"). (*See generally* ECF 5, AC.)[2] Defendants DOE, Eustache,

Mota, and Cicillini are the "DOE Defendants," and Defendants New York City and Finder are the

"City Defendants." Plaintiff sues each individual defendant in his or her individual and official

capacity. (*See id.*)

Plaintiff alleges numerous causes of action, including claims for employment

discrimination, hostile work environment, and retaliation based on sex/gender and/or

race/color pursuant to Title VII and the New York State Human Rights Law ("NYSHRL") (the

"Discrimination-Related Claims"); violation of the Family Medical Leave Act ("FMLA"); violation

of the Fourth Amendment and invasion of privacy (the "Privacy-Related Claims"); defamation;

and malicious prosecution and abuse of process. (*See* ECF 68, AC ¶¶ 136-290.)[3]

Pending before this Court is a motion to dismiss pursuant to Rules 12(b)(6) and 12(c) of

the Federal Rules of Civil Procedure. (*See* ECF 55, 7/13/23 Mot.) Defendants argue that

---

[2]     On December 22, 2023, Plaintiff refiled the AC, removing all information identifying minor children, to comply with Rule 5.2(a)(3) of the Federal Rules of Civil Procedure and this Court's December 18, 2023 Order (ECF 64, 12/18/23 Order). (*See* ECF 68.)

[3]     Plaintiff asserts each claim against a different group of Defendants, and she does not always provide an obvious connection between the substantive allegations supporting a particular cause of action and the Defendants being named in that cause of action. She also is not always clear or consistent about which Defendants she is linking with which claims.

In an effort to read the AC in the light most favorable to Plaintiff, for purposes of analyzing the claims, I interpret the AC as pleading the Privacy-Related Claims against the City Defendants; I interpret the AC as pleading all other claims (including the Discrimination-Related Claims, the FMLA claims, the malicious prosecution and abuse of process claims, and the defamation claims) against the DOE Defendants. Defendant New York City may not be named as a Defendant in claims based on acts or omissions by the DOE Defendants, because New York City and the DOE are separate legal entities. *See, e.g., Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 235, 248 (E.D.N.Y. 2012) (dismissing the City of New York as an improper party in a lawsuit by a former teacher alleging discrimination and retaliation by the DOE), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

Plaintiff's allegations are (1) barred by the doctrine of collateral estoppel and (2) fail to state any claims. (*See generally* ECF 57, Defs.' Memo; ECF 58, Defs.' Reply.) After having reviewed the filings on the docket, for the reasons set forth below and as specified herein, I respectfully recommend that the motion to dismiss be GRANTED.

## FACTUAL BACKGROUND

For purposes of the pending motion to dismiss, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in her favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017). As relevant to the pending motion, Plaintiff's allegations are summarized below.

## I.    Plaintiff's Mistreatment Arising out of Eustache's False Complaints

Plaintiff, a white woman, was a tenured special education teacher for more than 20 years at Abraham Lincoln Intermediate School in Brooklyn, where she had an unblemished record. (*See* ECF 68, AC at introductory paragraph, ¶¶ 60-61, 131, 169.) Eustache, a black male paraprofessional at her school, was assigned to work with her in September of 2017. *See* Affidavit of Sharon LaFia, *Matter of LaFia v. New York City et al.,* No. 152739/2020, N.Y. Sup. Ct., N.Y. Co. ("*Matter of LaFia*") (Mar. 12, 2020) ("Article 78 Aff.") ¶ 4.[4]

Starting in February 2018, Plaintiff was targeted based on her color/race and/or sex/gender. The mistreatment began after Eustache filed a false complaint against her for allegedly sending him harassing text messages containing sexual content. (*See* ECF 68, AC ¶¶ 8,

---

[4]      Plaintiff incorporates into the AC an affidavit she submitted in *Matter of LaFia*, an Article 78 proceeding in which she sought to compel New York City to defend and indemnify her in a lawsuit relating to the same issues underlying this suit (the "Article 78 Proceeding"). (*See* ECF 68, AC ¶ 69.)

10, 16, 82.) Eustache fabricated claims against her because she had reported him to Principal

Mota after several parents had complained to her that Eustache had been verbally and

physically abusive to their children and because she had cooperated with the school's

investigation into his "various acts of misconduct and physical violence" (*id.* ¶ 25) as well as his

use of a cell phone during class, leaving the class unattended, and tardiness, *see* Article 78 Aff.

¶¶ 4-6, 12, 16.

In or around May of 2018, Eustache was suspended after parents of one of his students

complained that their child had seen him looking at indecent photographs on his phone. *See*

Article 78 Aff. ¶¶ 16-18. In June of 2018, an assistant principal at Plaintiff's school informed her

that Eustache had filed a notice of claim against her and the DOE, among others, accusing her

of sexual harassment. *See id.* ¶¶ 24-27.

In May of 2019, Eustache began a case in Supreme Court, New York County, against

Plaintiff and the DOE, among others, alleging sexual harassment, race discrimination, and

hostile work environment arising out of sexually explicit communications supposedly sent to

him by Plaintiff (the "Eustache Action"). *See* Complaint, *Eustache v. DOE, et al.,* No.

153619/2019, N.Y. Sup. Ct., N.Y. Co. (*See also* ECF 68, AC ¶ 71.) DOE accepted service of the

complaint on her behalf. (*See* ECF 68, AC ¶ 72.)

Cicillini, another teacher at Abraham Lincoln Intermediate School, conspired with

Eustache and Principal Mota to scapegoat Plaintiff in connection with the Eustache Action. (*See*

*id.* ¶¶ 79-81.) Specifically, Cicillini made the inappropriate and sexually harassing comments to

Eustache by impersonating Plaintiff using Plaintiff's cell phone. (*See id.* ¶ 82.) The DOE and

Principal Mota knew or should have known that Cicillini had previously taken and used other

teachers' cell phones and therefore knew or should have known that Eustache's claims against Plaintiff were based on behavior by Cicillini. (*See id.* ¶¶ 82-83.) Plaintiff told Mota that she had been driving when one of the harassing texts had been sent to Eustache and that Cicillini had had access to Plaintiff's cell phone at the time. (*See id.* ¶ 98.)

## II.     Plaintiff's Efforts To Secure Representation by DOE in the Eustache Action

In May of 2019, Plaintiff filled out a form provided to her by Mota requesting legal representation in connection with the Eustache Action. *See* Article 78 Aff. ¶¶ 51-53. Plaintiff had reason to believe the request would be granted, since the DOE had accepted service on her behalf in that case. (*See* ECF 68, AC ¶¶ 72, 105.) On May 15, 2019, Plaintiff received an email from Finder, a lawyer who worked for the Law Department at the time, stating that Finder received Plaintiff's request for representation and wanted to set up a representation interview; Finder did not copy anyone from Plaintiff's union. *See* Article 78 Aff. ¶¶ 54-55, 65. On May 20, 2019, Plaintiff met with Finder; no one from her union was present. *See id.* ¶¶ 63, 66-68. Plaintiff "was under the impression that the interview was required for [her] to obtain such representation." *Id.* ¶ 64.

During the meeting, Finder asked Plaintiff to turn over her cellular phone so that Finder could "run it for evidence." *Id.* ¶ 70. Plaintiff complied, believing that turning the phone over was a precondition to being represented by the Law Department and that the evidence on the phone would be used for her benefit. *See id.* ¶ 71. The AC alleges that, at the meeting, Finder said she represented Plaintiff before copying the phone, and only told her afterwards that Finder did not represent her. (*See* ECF 68, AC ¶ 73.) However, in her Article 78 Affidavit, which Plaintiff incorporates by reference into the AC, Plaintiff states, "at the time I provided Ms.

Finder with my phone, I was never informed by Ms. Finder that the New York City Law Department would not be providing me with representation with respect to Eustache's civil suit," but rather was told that Finder "was not yet sure if the New York City Law Department would be able to provide me with legal representation due to the fact that the Department of Education was also named as a defendant in the lawsuit." Article 78 Aff. ¶ 72. Thereafter, Finder informed Plaintiff that she would not represent her in connection with the Eustache Action. *See id.* ¶¶ 76-78.

DOE subsequently used the evidence from Plaintiff's phone against her in a disciplinary proceeding pursuant to New York Education Law § 3020 that DOE commenced against Plaintiff in January of 2020 (the "3020-a Proceeding"). (*See* ECF 68, AC ¶ 233, citing *Matter of New York City Dep't of Educ. v. LaFia,* State Educ. Dep't No. 36157 (filed Jan. 9, 2020).) In November of 2019, Plaintiff sought the information taken from her phone through a New York State Freedom of Information Law request, to no avail. (*See* ECF 68, AC ¶ 230.)

### III.    The 3020-a Proceeding Against Plaintiff

On October 2, 2019, Eustache returned to work and was placed back in the classroom with Plaintiff. (*See id.* ¶ 16.) Plaintiff told Principal Mota that she felt unsafe working with Eustache due to his physical aggression and uncomfortable working with someone who had filed a lawsuit against her. (*See id.* ¶¶ 17, 91-95.) Mota ignored Plaintiff's request to separate her and Eustache. (*See id.*)

Prior to November of 2019, Plaintiff complained to Mota that Eustache was creating a hostile work environment and discriminating and retaliating against her because of her cooperation with the school in the earlier investigation of his alleged misconduct. (*See id.* ¶¶

110, 150-51, 154.) In retaliation for these complaints, over the next two months, Mota put several false write-ups into Plaintiff's file and threatened to terminate her. (*See id.* ¶ 112.) On January 6, 2020, Plaintiff was successful in a grievance against Mota, in which she accused Mota of making false allegations against her. (*See id.* ¶ 103.) As a result, the false statements by Mota were removed from Plaintiff's employment file. (*See id.*)

In response to Plaintiff's successful grievance, on January 9, 2020, DOE filed false charges against Plaintiff arising out of Eustache's allegations against her; DOE sought her termination in the 3020-a Proceeding. (*See id.* ¶¶ 115-16, 126-30). Specifically, Plaintiff was charged with the following behavior during the Winter and Spring of 2018: sending sexually explicit texts to Eustache on three occasions; commenting that her son thinks he is black and is out of control and smokes pot; asking Eustache to discuss his childhood poverty with a class; attempting to sit on Eustache's lap in the presence of students; and as a result of the foregoing, creating a hostile work environment. (*See id.* ¶¶ 115-16.) The DOE Defendants made these claims knowing or having reason to know that there was no probable cause, and as a result, the allegations were defamatory. (*See id.* ¶ 126.)

By contrast, Eustache, who was caught viewing pornography while working in a special education classroom and was the subject of multiple complaints by parents that he verbally and physically abused their children, was not subjected to 3020-a charges. (*See id.* ¶¶ 133, 172.) Plaintiff alleges that the DOE demonstrates patterns of racial/ethnic disproportionality in disciplinary actions, treating white employees accused of minor transgressions more harshly than employees of other races who are accused of more serious offenses. (*See id.* ¶ 209.)

IV.     **Plaintiff Challenges the Refusal To Represent and Indemnify Her in the Eustache Action**

On January 13, 2020, Plaintiff filed a notice of claim in connection with the refusal by New York City to represent and indemnify her in connection with the Eustache Action. (*See id.* ¶¶ 35, 104.) In March of 2020, Plaintiff brought the Article 78 Proceeding seeking to compel representation and indemnification in the Eustache Action. (*See id.* ¶ 35; *see also supra* note 4.) In August of 2020, the Supreme Court, New York County, denied Plaintiff's petition, holding that New York City "did not act arbitrarily and/or capriciously" by refusing to defend or indemnify Plaintiff in the Eustache Action, because the complaint in that matter accused her of "acts that are far beyond the scope of her employment." Decision & Order, *Matter of LaFia,* No. 152739/2020, at 7 (Aug. 28, 2020).[5] The Court reasoned that "allegedly sending salacious texts did not further [the DOE's] business, purpose, or mission." *Id.* It does not appear from the docket sheet that Plaintiff has appealed this decision.

V.      **Developments in the Eustache Action**

In September of 2021, the Supreme Court, New York County, granted in part a motion to dismiss Eustache's claims of sexual harassment, race discrimination, hostile work environment, and retaliation. The state court concluded that Eustache's complaint adequately alleged that Plaintiff had sexually harassed him but that the allegations of race discrimination amounted to "unactionable 'petty slights and trivial inconveniences.'" *See* Decision & Order,

---

[5]     This Court may take judicial notice of the state court decisions referenced in the AC to the extent that they establish that the decisions were rendered. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

*Eustache,* No. 153619/2019, at 5 (Sept. 16, 2021) ("*Eustache I*"). The state court dismissed the sexual harassment claims against the DOE under a theory of direct liability and against Plaintiff because the complaint did not adequately allege that Plaintiff was Eustache's supervisor. *See id.* at 5-6. The state court allowed those claims to proceed on a theory of vicarious liability against DOE. *See id.* The state court initially dismissed Eustache's retaliation claim against DOE and Plaintiff, because it found that there was no causal connection between his protected activity (complaining to Principal Mota about alleged advances by Plaintiff) and his suspension in May of 2018. *See id.* at 7. On a motion to reargue, however, in March of 2023, the state court reinstated Eustache's claims of retaliation against DOE and Plaintiff, finding that his complaint sufficiently alleged a causal relationship between his complaints to Mota and his suspension. *See* Decision & Order, *Eustache,* No. 153619/2019, at 5-6 (Mar. 1, 2023) ("*Eustache II*").

Plaintiff's subsequent motion for summary judgment in the Eustache Action was denied in November of 2023, on the ground that it was filed before any defendant had answered. *See* Decision & Order, *Eustache,* No. 153619/2019, at 2-3 (Nov. 13, 2023) ("*Eustache III*"). On November 25, 2023, she timely filed a notice of appeal, and the matter is pending before the Supreme Court of the State of New York Appellate Division, First Department. *See* Notice of Appeal, *Eustache,* No. 153619/2019 (Nov. 25, 2023).

## V.    Developments in the 3020-a Proceeding

Plaintiff was the subject of a formal disciplinary hearing as part of the 3020-a Proceeding, which was held remotely on 14 days in late 2021 and early 2022. (*See* ECF 68, AC ¶¶ 18-20.)

Defendants New York City and DOE refused to provide records and information to which Plaintiff was entitled and which could have exonerated her during the 3023-a proceedings. (*See id.* ¶ 178.) Witnesses in the 3020-a proceedings were coached to provide false testimony to ensure that Plaintiff would be found guilty of the charges. (*See id.* ¶¶ 21, 180.) Plaintiff was not provided with an opportunity to review the evidence against her. (*See id.* ¶ 21.) While the 3020-a hearing was pending, Plaintiff was relegated to a "rubber room" (*see id.* ¶ 18), which is a holding facility administered by the DOE for teachers awaiting resolution of disciplinary actions.

The hearing officer ruled that Plaintiff was guilty of the following charges:

- Specification 2: Sending a text on March 2, 2018, asking Eustache about the size of his genitals. (ECF 56-7, Opinion & Award, *Matter of New York City Dep't of Educ., State Educ. Dep't No. 36157,* at 24 (April 25, 2022)).[6]

- Specification 3A: Sending a text on March 2, 2018, calling Eustache her "black lover." *Id.* at 25.

- Specifications 4B, C: Telling Eustache that her son was "out of control" and "smoke[d] pot." *Id.* at 26.

- Specification 6: Attempting to sit on Eustache's lap in while students were present. *Id.*[7]

---

[6]    The hearing officer did not credit Plaintiff's explanation that Cicillini sent the message, because at the time the text was sent, Plaintiff and Cicillini were scheduled to be in different parts of the school building. Cicillini would have to have taken Plaintiff's phone, used it to text Eustache and returned it, all without Plaintiff's knowledge, which the hearing officer found to be "highly improbable and incredible." *Id.*

[7]    The hearing officer concluded that the DOE had not established: that Plaintiff sent Eustache a text asking to have sex, because it was possible that Cicillini impersonated Plaintiff and sent that message; that Plaintiff sent Eustache a text saying that she was flirting with a

The hearing officer found that Plaintiff was not guilty of sexual harassment notwithstanding her misconduct because Eustache participated in the texting and did not complain until the DOE began an investigation into his behavior. The hearing officer also found that Plaintiff was not guilty of race discrimination, because there was no evidence that she used the term "my black lover" in a racially discriminatory manner, while there was evidence that she and Eustache used race as "humor not as an insult." *Id*. The hearing officer imposed a fine of ten thousand dollars payable over two years. *See id.* at 29. Nothing in the record indicates Plaintiff appealed the opinion and award.

## VI.  Plaintiff's Request for FMLA Leave

Plaintiff alleges that the DOE discriminated against her when they processed her June 2022 request for FMLA leave to care for her daughter, who had cancer, more slowly than the requests of male teachers seeking FMLA leave. (*See* ECF 68, AC ¶¶ 216-21.) After her FMLA leave request took three weeks to be approved, she complained that she was treated worse than male colleagues. (*See id.* ¶¶ 190-91, 216-21.)[8] In retaliation for complaining about discriminatory treatment in connection with her request for FMLA leave, Plaintiff was not sent back to Abraham Lincoln Intermediate School at the conclusion of her 3020-a proceedings, as

---

black man, because the DOE failed to provide the text; that Plaintiff told Eustache that her son behaves like a black adolescent, wearing his pants hanging low; or that Plaintiff sexually harassed Eustache. *See id*. at 27.

[8]      While the AC states in conclusory fashion in a few places that Plaintiff was denied FMLA leave (*see, e.g.,* ECF 68, AC ¶ 222), and Plaintiff's opposition papers say the same (*see* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 16), the actual factual allegations do not support that position: the AC alleges that she was denied FMLA benefits to which she was entitled; that her FMLA leave took three weeks to be approved; and that she was deprived of electronic mail notices that caused her to lose "several compensated days." (ECF 68, AC ¶¶ 219-22.)

she had been promised. (*See id.* ¶ ¶ 187-88, 193-94.) Instead, she was sent to another school,

where she was required to work out-of-title (i.e., in an area outside the subject of special

education in which she is licensed). (*See id.*)

**VII.    Exhaustion of Administrative Remedies**

On February 7, 2020, Plaintiff filed a complaint of discrimination with the New York

State Division of Human Rights, and it was cross-filed with the Equal Employment Opportunity

Commission. A right to sue letter was issued on July 14, 2022. (*See id.* ¶¶ 38-39.) Plaintiff timely

commenced this case within 90 days of receiving the right to sue letter. (*See id.* ¶ 40.)

**PROCEDURAL HISTORY**

On September 19, 2022, Plaintiff filed a complaint alleging claims arising out of her

employment, the search of her phone, and the 3020-a Proceeding. (*See* ECF 2, Compl.) On

September 20, 2022, the Court issued an order of reference to Magistrate Judge James L. Cott

for general pretrial supervision. (*See* ECF 4, Order.)

On October 6, 2022, Plaintiff filed the AC. (*See* ECF 5, AC.) On January 20, 2023,

Defendants answered the AC and asserted a counterclaim under the New York Anti-SLAPP

Statute, which bars <u>S</u>trategic <u>L</u>awsuits <u>A</u>gainst <u>P</u>ublic <u>P</u>articipation. (*See* ECF 40, Answer.) On

February 9, 2023, Plaintiff filed a pre-motion letter regarding an anticipated motion to dismiss

the counterclaim. (*See* ECF 47, Letter.) On June 22, 2023, the Court set a briefing schedule for

the motion to dismiss, indicated that it would address the request by Plaintiff to move to

dismiss the counterclaims after a decision on the Defendants' motion to dismiss, and stayed

discovery pending a decision on Defendants' motion to dismiss. (*See* ECF 53, Order.)

The case was referred to mediation, but mediation was unsuccessful. (*See* ECF 54, 7/31/23 Final Report of Mediator.) Defendants' fully briefed motion to dismiss the AC and for judgment on the pleadings was submitted on August 10, 2023. (*See* ECF 55, Mot.; ECF 57, Defs.' Memo.; ECF 56, Defs.' Decl.; ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp.; ECF 58, Defs.' Reply.)

The Court issued amended orders of reference, referring the pending dispositive motion to Judge Cott for a report and recommendation. (*See* ECF 61, 8/17/23 Amended Order; ECF 62, 10/13/23 Amended Order.) The reference was reassigned to me on November 15, 2023.

## DISCUSSION

### I.     Legal Standard for Motions Pursuant to Rules 12(c)

Defendants ask the Court to dismiss the AC pursuant to Rules 12(b)(6) and 12(c) based on the doctrine of collateral estoppel and on the ground that the AC fails to state any claims. (*See* ECF 57, Defs.' Memo. at 9.) Motions pursuant to Rule 12(b) must be made before pleading if a responsive pleading is allowed. *See* Fed. R. Civ. P. 12(b). Because Defendants have already answered the AC (*see* ECF 40, Answer), their motion should be considered under Rule 12(c), although motions under both Rules are analyzed under the same standard. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

In deciding a Rule 12(c) motion for judgment on the pleadings, a court may consider "matters of which judicial notice may be taken" such as "relevant pleadings, motion papers, orders, and judgments in a state court action without converting [the defendant's] motion to one for summary judgment." *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-CV-3099 (JGK), 2001 WL 300735, at *9 n.7 (S.D.N.Y. Mar. 27, 2001). Judgment on the pleadings on collateral estoppel grounds on a Rule 12(c) motion is appropriate when "it is clear from the

face of the complaint, and matters of which the court may take judicial notice, that the

plaintiff's claims are barred as a matter of law." *Conopco, Inc., v. Roll Int'l*, 231 F.3d 82, 86-87

(2d Cir. 2000).

Judgment on the pleadings on a Rule 12(c) motion for "failure to state a claim upon

which relief can be granted"  is appropriate when the complaint does not "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. In deciding a Rule 12(c) motion for failure to state a claim, the Court "must

accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citation omitted). Although Rule 8 "does not require 'detailed factual allegations,' . . . it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at

678 (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible

claim is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted).

## II.    Plaintiff's Claims Should Not Be Barred by the Doctrine of Collateral Estoppel

Defendants argue that under Rule 12(c), Plaintiff's claims should be dismissed as barred

by the doctrine of collateral estoppel. Specifically, they argue that the Discrimination-Related

Claims, the malicious prosecution and abuse of process claims and the claims for defamation

are barred by the decision in the 3020-a Proceeding and that the claims against the City

Defendants are barred by the decision in the Article 78 Proceeding. (*See* ECF 57, Defs.' Memo.

at 11-15.) I set out the relevant law relating to collateral estoppel and discuss each set of claims

below.

A.    The Doctrine of Collateral Estoppel

The doctrine of collateral estoppel, which is also known as issue preclusion, prevents a

party "from relitigating an issue that the party previously litigated and lost." *Denicolo v. Bd. of*

*Educ. of City of New York*, 328 F. Supp. 3d 204, 211 (S.D.N.Y. 2018). As this Court explained in

*Ford v. New York City Bd. of Educ.*, under New York law:

> [C]ollateral estoppel precludes a party from relitigating an issue in a subsequent
> action or proceeding when "(1) the identical issue necessarily was decided in the
> prior action and is decisive of the present action, and (2) the party to be precluded
> from relitigating the issue had a full and fair opportunity to litigate the issue in the
> prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (footnote omitted);
> *see also LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("[C]ollateral
> estoppel precludes a party from relitigating in a subsequent action or proceeding
> an issue clearly raised in a prior action or proceeding and decided against that
> party whether or not the tribunals or causes of action are the same." (internal
> quotation marks and alteration omitted)).

*Ford v. New York City Bd. of Educ.,* No. 19-CV-6327 (JPC) (KHP), 2022 WL 1063036, at *4

(S.D.N.Y. Apr. 8, 2022).[9] Defendants, as the parties asserting issue preclusion, have the burden

of demonstrating that the identical issues were previously decided, while Plaintiff bears the

burden of demonstrating the absence of a full and fair opportunity to litigate in the prior action.

---

[9]    New York's collateral estoppel rule applies because Plaintiff's prior proceedings for her
termination from employment with Defendant DOE occurred in New York. *See LaFleur*, 300 F.3d
at 271 ("A federal court must apply the collateral estoppel rules of the state that rendered a
prior judgment on the same issues currently before the court, which in this case is New York.").

*See Lawtone-Bowles v. City of New York, Dep't of Sanitation,* 22 F. Supp. 3d 341, 348 (S.D.N.Y. 2014).

Section 3020-a hearings are "quasi-judicial" proceedings that may have preclusive effect if the criteria of collateral estoppel are met. *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311-14 (2d Cir. 2005). "Whether a § 3020-a determination has preclusive effect depends on the precise issue determined as compared to the issue in the subsequent litigation." *Denicolo*, 328 F. Supp. 3d at 211. Likewise, Article 78 proceedings can have issue preclusive effect when the issues litigated in the Article 78 proceeding are identical to the issues raised in the later proceeding. *See Lawtone-Bowles,* 22 F. Supp. 3d at 349.

> B.   Analysis of Collateral Estoppel Arguments
>
> > 1.   Collateral Estoppel and Plaintiff's Discrimination-Related Claims, Abuse of Process and Malicious Prosecution Claims, and Defamation Claims

Defendants assert that every cause of action in the AC is based on the premise that the Defendants harmed Plaintiff as a result of some sort of complicity in Eustache's false allegations about her. (ECF 57, Defs.' Memo. at 11.) This is something of an overstatement, but it is fair to say that Plaintiff's Discrimination-Related Claims, claims for malicious prosecution and abuse of process, and claims for defamation arise out of Eustache's allegedly false complaints about Plaintiff. And the substance of his complaints were addressed to an extent in the decision and award in the 3020-a Proceeding. The question is whether Defendants are correct in their assertion that "clearly the issues in both the § 3020-a hearing and this matter are identical." (*Id.* at 12.) I do not believe that they are.

Defendants argue that "it is undisputed that the issue previously litigated, the veracity of Eustache's allegations, was necessary to support a valid and final judgment on the merits." (*Id.*) This is partially true. The hearing officer found that Plaintiff had sent sexually suggestive texts to Eustache and had attempted to sit on his lap. (ECF 56-7, Opinion & Award, *Matter of New York City Dep't of Educ.,* State Educ. Dep't No. 36157, at 24-26.) Those findings, while related to the issues raised by some of Plaintiff's claims, are not identical to them.

Plaintiff's discrimination claim primarily rests on her allegation that she was afforded less due process than Eustache when he was accused of misconduct, and that the difference was because of her race/color and/or sex/gender. Among the adverse work events she describes are false disciplinary write-ups, problems with the 3020-a Proceeding, and being placed in a rubber room and denied the opportunity for overtime during the pendency of the 3020-a Proceeding. (*See* ECF 63-1, Pl.'s Decl. Ex. A, Pl.'s Supp. Opp. at 15-16.) Her hostile work environment claim focuses on the allegation that the DOE Defendants failed to handle her complaints about Eustache in an appropriate manner because of her race/color and/or sex/gender. (*See id.* at 17-18.) And her retaliation claim is premised on allegedly being subjected to the adverse work events set out above, among others, because she engaged in protected activity by complaining to Principal Mota about Eustache. (*See id.* at 16-17.) Her malicious prosecution and abuse of process claims turn on her assertion that the DOE Defendants had improper motives for prosecuting the 3020-a Proceeding. (*See* ECF 68, AC ¶¶ 260, 273.) And her defamation claims are based on the theory that the DOE Defendants' charges against her in the 3020-a Proceeding were knowingly false. (*See id.* ¶¶ 248-49.)

Defendants' collateral estoppel arguments with respect to Plaintiff's Discrimination-Related Claims, claims for malicious prosecution and abuse of process, and defamation claims are based on a faulty premise – that the hearing officer's conclusion that Plaintiff made inappropriate statements and engaged in improper behavior vis-à-vis Eustache necessarily precludes a finding that the DOE Defendants brought the 3020-a Proceeding against Plaintiff in the first place for discriminatory or retaliatory reasons, or that they mishandled her complaints about Eustache for discriminatory reasons. *See Leon v. New York City Dep't of Educ.*, 612 F. App'x 632, 634-35 (2d Cir. 2015) ("The court's error . . . stems from the faulty assumption that termination for cause *necessarily* precludes the possibility of termination motivated by unlawful animus."); *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("But-for causation does not require a showing that retaliation was an employer's sole motive, only that the adverse action would not have occurred in the absence of the retaliatory motive." (internal quotation marks omitted)).

The reasoning of the Court in a recent case brought by a former New York City public school teacher for discriminatory and retaliatory termination is instructive. In denying a motion to dismiss on collateral estoppel grounds, the Court explained:

> While it is true that the hearing officer found that there was "just cause" for Plaintiff's termination, "[t]here is no indication that the Section 3020-a hearing addressed, much less 'actually decided,' whether the charges leading to [Plaintiff]'s termination were driven, even in part, by . . . retaliatory intent." *Leon v. New York City Dep't Educ.*, 612 F. App'x 632, 634-35 (2d Cir. 2015).

*Ford*, 2022 WL 1063036, at *5. The Court went on to point out that there was:

> no mention of the word "retaliation" anywhere in the hearing officer's written decision nor does Defendant contend that Plaintiff expressly raised retaliation or that the hearing officer made any findings as to any retaliation or retaliatory intent by Defendant. *See Denicolo*, 328 F. Supp. 3d at 211-12 (holding that collateral

18

estoppel did not bar the plaintiff's retaliation claim because, although "the hearing officer did decide . . . that the plaintiff acted improperly," "that she had committed misconduct," and "that her actions warranted termination," "the hearing officer did not decide whether the plaintiff was subjected to retaliatory actions by the defendants" and "[t]here is no indication that the hearing officer addressed, much less decided, whether the charges leading to the plaintiff's termination were driven, even in part, by retaliatory intent"); *Wein v. New York City Dep't of Educ.*, No. 18-CV-11141 (PAE), 2020 WL 4903997, at *10-11 (S.D.N.Y. Aug. 19, 2020) (holding that collateral estoppel did not apply because the plaintiff's Article 78 petition "did not put at issue age or disability discrimination in that proceeding" and "the petition d[id] not contain any reference to discrimination"); *Washington v. New York City Dep't of Educ.*, No. 16 CV-9588 (ER), 2017 WL 4687982, at *8 (S.D.N.Y. Oct. 16, 2017) (holding that the plaintiff's retaliation claims were not barred by collateral estoppel because the section 3020-a hearing officer "never explicitly addressed or ruled on the merits of any retaliation argument").

*Id*.

Here, as in *Ford,* the finding in the 3020-a Proceeding that the Plaintiff engaged in certain instances of misconduct "does not necessarily preclude a jury from later finding that the plaintiff was also [subject to adverse work events] at least in part because of [retaliatory] reasons. *Id.* (internal citation and quotation marks omitted). This conclusion holds with regard to all of Plaintiff's Discrimination-Related Claims, her malicious prosecution and abuse of process claims, and her defamation claims. I therefore respectfully recommend denying Defendants' Rule 12(c) motion on collateral estoppel grounds with regard to those claims.

2. Collateral Estoppel and Plaintiffs Privacy-Related Claims

Defendants' argument that the issues decided in the Article 78 Proceeding are identical to the issues raised by certain of Plaintiff's claims is premised on the idea that the claims against Finder and her employer, the City, arise out of their refusal to defend and indemnify Plaintiff – a refusal that was found in the Article 78 Proceeding to be appropriate. However,

Plaintiff states in her opposition to the motion to dismiss that the basis of the claims against the City Defendants is Finder's behavior when she took and searched Plaintiff's cell phone. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 5.) This position is borne out by the AC, which does not mention the failure to defend and indemnify in connection with any specific claim, and which discusses the search of Plaintiff's cell phone in connection with the Privacy-Related claims. Because taking and searching Plaintiff's cell phone is unrelated to the determination in the Article 78 Proceeding that refusing to defend and indemnify Plaintiff was neither arbitrary nor capricious, I respectfully recommend denying Defendants' Rule 12(c) motion on collateral estoppel grounds with regard to the Privacy-Related Claims.

III.    **Plaintiff Fails Adequately To Plead Her Claims**[10]

A.    <u>Plaintiff Fails Adequately To Plead Her Claims for Discrimination/Hostile Work Environment and Retaliation (Against the DOE Defendants)</u>[11]

1.    Legal Standard for Claims of Discrimination

A Plaintiff alleging employment discrimination "need not plead a *prima facie* case." *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013). "A plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (holding that the district court erred when it granted 12(c) dismissal because the plaintiff had not established prima facie case of discrimination.)

However, the elements of the prima facie case "provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453,

---

[10]    Plaintiff asserts that the Court should deny Defendants' 12(c) motion to the extent it is based on an argument that she has failed adequately to plead her claims, because Plaintiff believes that Defendants' arguments in the section of their opening brief addressing that point are too conclusory. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 12-13.) I disagree that Defendants' brief merely recites the elements of Plaintiff's causes of action and asserts that Plaintiff has not adequately pleaded those elements. The brief makes substantive arguments.

[11]    Claims of discrimination, hostile work environment, and retaliation under Title VII and the NYSHRL are evaluated under the same standard. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) (hostile work environment). One difference between Title VII and the NYSHRL is that the former statute does not permit individual liability, *see Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004), while the latter does, *see Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012). In assessing claims of discrimination under the NYSHRL, direct individual liability is limited to people with an ownership interest or supervisors, who "have the authority to hire and fire employees." *Malena,* 886 F. Supp. 2d at 365-66. None of the individual defendants here has that authority. However, the NYSHRL also allows for aiding and abetting liability, which holds individuals responsible when they participate in the behavior underlying the claim. *See, e.g., Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Ind. v.*

461 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted). Here, the first two elements of the prima facie case for employment discrimination are not in dispute: the AC alleges that Plaintiff is a member of a protected class and was qualified for her position. (*See* ECF 68, AC ¶¶ 60-61, 130, 136). At issue are whether Plaintiff has sufficiently pleaded (1) that she suffered an adverse employment action and (2) that Defendants acted with discriminatory intent.

### a.  Adverse Employment Action

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted). The change in working conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Henry v. NYC Health & Hosp. Corp.*, 181 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha,* 548 F.3d at 78) (internal quotation marks omitted).

---

*Ellerth,* 524 U.S. 742 (1998). Accordingly, the federal Discrimination-Related Claims against all individual defendants should be dismissed with prejudice, but the NYSHRL Discrimination-Related Claims against the individual DOE Defendants should be allowed to proceed to the extent that Plaintiff has adequately pleaded those claims.

b. *Discriminatory Intent*

"The law in this Circuit is clear that the *'sine qua non'* of a Title VII discrimination claim is that 'the discrimination must be *because of* [a protected characteristic].'" *Henry,* 18 F. Supp. 3d at 407 (S.D.N.Y. 2014) (quoting *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007)). "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" *Henry*, 18 F. Supp. 3d at 408 (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). This "does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Hernandez v. City of New York,* No. 11-CV-3521 (SJ) (RER), 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) (quoting *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001)) (internal quotation marks omitted).

Allegations of "adverse actions taken against employees who are not similarly situated" do not "establish an inference of discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). "[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019). The "plaintiff must still identify at least one comparator to support a minimal inference of discrimination" to survive a motion to dismiss. *Goodine v. Suffolk Cnty. Water Auth.*, No. 14-CV-4514 (JS) (ARL), 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017).

"In the context of employee discipline, . . . the plaintiff and the similarly situated employee must have 'engaged in comparable conduct,' that is, conduct of 'comparable seriousness.'" *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014). "A proposed comparator is not similarly situated 'in all material respects' unless she engaged in all of the same misconduct as plaintiff, or at least committed the most serious of the infractions for which the plaintiff was subjected to an adverse employment action." *Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) (citation omitted).

2.      Analysis of Plaintiff's Claims for Discrimination

a.   *Adverse Employment Action*

Plaintiff claims that she suffered several adverse work events. Most relate to her contention that she was afforded less due process than Eustache when he was accused of misconduct, and that the difference was because of her race/color and/or sex/gender. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 15-16.) Specifically, she points to the following adverse employment events involving the 3020-a Proceeding: false testimony provided at the 3020-a hearing; subjecting her to a prolonged investigation and hearing; and the failure to comply with the FOIL request that would provide Plaintiff with the evidence needed to defend herself. (*See id.*) The Second Circuit has held that 3020-a hearings may constitute adverse employment actions. Such proceedings are more than "a mere inconvenience." *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders*, 361 F.3d at 755). "A Section 3020-a hearing permits suspension with pay and carries with it the threat of possible termination." *Burkybile*, 411 F.3d at 314. The hearing may also "cause[] [a teacher] to incur the expense and inconvenience of extensive litigation." *Id.* In this case, Plaintiff was required to pay ten thousand dollars as a result of the 3020-a

Proceeding. Accordingly, Plaintiff adequately alleges that the 3020-a Proceeding was an adverse work event.

Plaintiff claims she suffered other adverse employment actions as well, including Eustache being placed back in her classroom in October of 2019 over her insistence that she feared working with him; false disciplinary write-ups by Principal Mota at the end of 2019; Plaintiff's transfer during the pendency of the 3020-a Proceeding from her school of twenty years to a rubber room; and the inability to obtain overtime hours. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 15-16.) Courts in this Circuit have found that assignment to a rubber room is an adverse work event. *See, e.g., Batyreva v. N.Y.C. Dep't of Educ.*, No. 07-CV-4544 (PAC) (DF), 2010 WL 3860401, at *12 (S.D.N.Y. Oct 1, 2010), *aff'd*, 464 Fed. App'x 31 (2d Cir. 2012). Accordingly, Plaintiff has adequately alleged that being placed in a rubber room was an adverse work event.

The other actions do not rise to the level of adverse work events. *See, e.g., Carlucci v. Kalsched*, 78 F. Supp. 2d 246, 256 (S.D.N.Y.  2000) ("Subjective beliefs that certain behavior is 'scary' is not an adverse employment action."); *Henry*, 181 F. Supp. 3d at 407 (finding that the plaintiff had not adequately pleaded an adverse work event when she did not allege "that she received any punishment as a result of these purportedly false charges, let alone that such punishment 'affected her compensation, promotion opportunities, or any other term, privilege or condition of her employment'" (quoting *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 321 (S.D.N.Y. 2002)); *Henry*, 181 F. Supp. 3d at 406 (holding that where, as here, Plaintiff "fails to allege facts plausibly indicating that she suffered any material detriment as a result of being

denied overtime," the "conclusory allegation that she was denied overtime, without more, is insufficient to substantiate an adverse employment action").

    *b.  Discriminatory Intent*

Plaintiff alleges discriminatory intent by stating that she was treated worse than Eustache under similar circumstances and that the DOE demonstrates patterns of racial/ethnic disproportionality in disciplinary actions, treating white employees accused of minor transgressions more harshly than employees of other races who are accused of more serious offenses. (*See* ECF 68, AC ¶¶ 133, 172, 209.) On a 12(c) motion, the Court "must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).

I do not believe that Plaintiff's allegations would plausibly allow a jury to reach the conclusion that she and Eustache are similarly situated. To begin with, Plaintiff and Eustache had different job titles (she was a teacher and he was a paraprofessional), and she does not allege that their job responsibilities were substantively the same. *See, e.g., Garrido v. N.Y.C. Dep't of Educ.*, No. 16-CV-9464 (DAB), 2018 WL 1664793, at *6 (finding that a substitute educational paraprofessional was not an appropriate comparator for an educational paraprofessional). Allegations of "adverse actions taken against employees who are not similarly situated" do not "establish an inference of discrimination." *Littlejohn*, 795 F.3d at 312.

The misconduct of which Plaintiff and Eustache were accused was different as well: Plaintiff was accused of sexual harassment of a fellow employee (*see* ECF 68, AC ¶¶ 7, 12), while Eustache was accused of viewing pornography and bullying students (*see id.* ¶ 7). The

circumstances of the accusations differed as well. Plaintiff was accused by a fellow DOE employee (*see id*.), while Eustache was accused by students (through their parents) (*see id.*). *See, e.g., Garrido,* 2018 WL 1664793, at *6 (noting that "it is not hard to imagine that the DOE might treat accusations coming from these two different sources [a teacher and a student] differently"). But Eustache was not charged with sexual harassment, and "[a] proposed comparator is not similarly situated" when he was not accused of "the most serious of the infractions for which the plaintiff was" disciplined. *Risco*, 868 F. Supp. 2d at 100.

Finally, it is not clear that Plaintiff's treatment was actually worse than Eustache's – while she was subjected to the 3020-a Proceeding and sent to a rubber room (*see* ECF 68, AC ¶¶ 20, 187), he was suspended for an unstated amount of time, and there is no indication if his suspension was with or without pay (*see id.* ¶ 16). *See also* Article 78 Aff. ¶¶ 16-17. Under these circumstances, I do not find that Plaintiff has adequately pleaded, based on the differences between her treatment and Eustache's, that the DOE Defendants acted with discriminatory intent when they made her submit to the 3020-a Proceeding and sent her to a rubber room, which are the two actions she points to that qualify as adverse work events.

Nor is Plaintiff's allegation that DOE treats white employees worse than employees of other races sufficient to plead discriminatory intent in connection with the two adverse work events identified in the AC, because Plaintiff fails to identify her comparators with specificity. She "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [hers], or how they were treated." *Henry,* 18 F. Supp. 3d at 408. "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class" of non-white employees is insufficient to "'nudge [] [her] claims across the

line from conceivable to plausible,' and thus is insufficient to support her racial discrimination

claim." *Id.* (quoting *Twombly,* 550 U.S. at 570 (internal citation omitted)).

* * *

For the foregoing reasons, I conclude that Plaintiff has adequately pleaded that she

suffered from two adverse work events – the 3020-a Proceeding and being sent to a rubber

room – but that her claims for employment discrimination should be dismissed because she

fails adequately to allege that the DOE Defendants acted with discriminatory intent.

### 3.   Legal Standards for Claims of Hostile Work Environment

The Second Circuit has explained that, to state a claim for a hostile work environment, a

plaintiff must plead facts tending to show that the conduct in question: "(1) 'is objectively

severe or pervasive – that is, . . . creates an environment that a reasonable person would find

hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as

hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected

class].'" *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y.

2013) (quoting *Patane,* 508 F.3d at 113). "[A] work environment's hostility should be assessed

based on the 'totality of the circumstances.'" *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift

Sys., Inc.*, 510 U.S. 17, 23 (1993)). Factors that may be considered include: "(1) the frequency of

the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a

mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work

performance." *Patane*, 508 F.3d at 113 (internal quotation marks and citation omitted). The

Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a

motion to dismiss such a claim. *Id.*

4.   Analysis of Plaintiff's Claims for Hostile Work Environment

Most of the incidents that Plaintiff alleges created a hostile work environment related to

Eustache, who was "kn[own] to be violent" and "a convicted criminal," being placed back in

Plaintiff's classroom in October of 2019, after he had sued her in the Eustache Action for sexual

harassment. She alleges that Principal Mota ignored her fear of Eustache and disciplined her for

refusing to chaperone a school trip with him. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at

18.) However, she provides no explanation for why Mota refused her requests to be separated

from Eustache, other than saying that Mota's conduct "evidences preferential treatment for

black males over female white teachers." (ECF 68, AC ¶ 197.)

I conclude that Plaintiff does not meet even the low bar set by the Second Circuit for

pleading claims of hostile work environment. It is not clear that being required to work with

Eustache, with whom Plaintiff had previously worked apparently without significant issue, is

"sufficiently severe or pervasive." *See Martinez v. City of New York*, 338 F. App'x 71, 73 (2d Cir.

2009) (holding that a plaintiff "must first show that his workplace 'was permeated with

discriminatory intimidation, ridicule, and insult,' that was 'sufficiently severe or pervasive to

alter the conditions' of the victim's employment" (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d

733, 745 (2d Cir. 2003))).

Even if being forced to work with Eustache was sufficiently severe and pervasive,

Plaintiff has not adequately alleged that the DOE Defendants created a hostile work

environment *because of* Plaintiff's membership in protected classes. *See Trachtenberg*, 937 F.

Supp. 2d at 472. Plaintiff's allegation about the reason for the allegedly hostile work

environment – that Mota's behavior demonstrates a preference for black males over white

females – is wholly conclusory. It therefore is insufficient to adequately allege a causal link between the complained-of behavior and Plaintiff's race or gender. *See, e.g., Dabney v. Christmas Tree Shops,* 958 F. Supp. 2d 439, 457 n.17 (S.D.N.Y. 2013) (dismissing hostile work environment claim because the plaintiff had not alleged that the problems with her work environment "stemmed from discriminatory behavior"), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014).

### 5.   Legal Standards for Claims of Retaliation

Besides outlawing discrimination in the workplace, Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). NYSHRL likewise prohibits retaliation for opposing acts of employment discrimination due to membership in a protected class. *See* N.Y. Exec. L. § 296(7). Federal and state anti-discrimination law therefore "prohibit[] an employer from taking 'materially adverse' action against an employee because the employee opposed conduct" prohibited by the anti-discrimination laws or "the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (Title VII); *Pilgrim v. McGraw Hill Cos.,* 599 F. Supp. 2d 462, 468-69 (S.D.N.Y. 2009) (NYSHRL).

Pleading a prima facie case of retaliation requires alleging facts showing that: (1) the plaintiff participated in an activity protected by anti-discrimination laws, (2) the employer knew of that participation, (3) the employer subjected the plaintiff to a materially adverse employment action after the protected activity, and (4) there was "a causal connection

between the protected activity and the adverse employment action." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). A retaliation claim survives a motion for judgement on the pleadings when "the plaintiff . . . plausibly allege[s] that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) "because" [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

a.    *Protected Activity*

"'In order for an employee's complaints to be a 'protected activity' they must relate to an alleged violation of [antidiscrimination law], *i.e.*, the complaints must relate to race or gender.'" *Wong v. Blind Brook-Rye Union Free Sch. Dist.*, No. 20-CV-2718 (CS), 2022 WL 17586324, at *10 (S.D.N.Y. Dec. 12, 2022) (quoting *Taylor v. Fam. Residences & Essential Enters., Inc.*, No. 03-CV-6122 (DRH), 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008)). "'Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity.'" *Wong*, 2022 WL 17586324, at *10 (quoting *Batiste v. City Univ. of N.Y.*, No. 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017)).

### b. Adverse Employment Action

A materially adverse employment action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (applying *Burlington* to § 1981 retaliation claim).

### c. Causation

A plaintiff may plead that an adverse work event was caused by the protected activity either "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

"While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together.'" *Galimore*, 641 F. Supp. 2d at 288 (internal citations omitted); *see also Sareen v. Port Auth. of N.Y. & N.J.,* No. 12-CV-2823 (PAE), 2013 WL 6588435, at *14 (S.D.N.Y. Dec. 16, 2013) (collecting cases).

6.   Analysis of Plaintiff's Claims of Retaliation

a.   *Plaintiff's Cooperation with DOE's Investigation of Eustache*

Plaintiff alleges that she engaged in protected activity by cooperating with DOE's investigation of possible misconduct by Eustache in the Spring of 2018. (*See* ECF 68, AC ¶ 70.) She contends that Eustache retaliated against her by making false accusations that she had sexually harassed him in June of 2018, which led to his 2019 lawsuit against her. (*See id.*)

Plaintiff's cooperation with her employer's investigation into Eustache's possible misconduct does not qualify as protected activity *relating to race and gender*, since she does not allege that Eustache was accused of race or gender discrimination. *See Taylor*, 2008 WL 268801, at *13 (in evaluating a claim of retaliation based on alleged gender-related protected activity, holding that the plaintiff's complaints about being assigned a shift that left him unable to get to his second job on time were not protected activity under Title VII, because the complaints had nothing to do with the plaintiff's gender); *Wong*, 2022 WL 17586324, at *10 (in evaluating a claim of retaliation based on alleged race-related protected activity, ruling that the plaintiff's protests that the school district was not pursuing certain grants were not protected activity under Title VII, because the grants made no mention of race). The claims against Eustache were that he mistreated special education students, was frequently tardy, came to school after smoking marijuana, and watched pornography on his cell phone when he was in the classroom with children. *See* Article 78 Aff. ¶¶ 4-6, 12-14, 16-18. (*See also* ECF 68, AC ¶¶ 131-33, 137-39.) As such, Plaintiff's cooperation with the investigation of Eustache cannot support her retaliation claim.

> b. *Plaintiff's Complaints to Mota About Mistreatment of Special Education Students*

In discussing her retaliation claims, Plaintiff focuses primarily on her allegation that in the Fall of 2019, she engaged in protected activity when she raised concerns about abuse of special education students reported to her by their parents. (*See* ECF 63-1, Pl.'s Decl. Ex. 1, Pl.'s Supp. Opp. at 17-18.) She maintains that the DOE Defendants retaliated against her by placing false write-ups in her employment file, subjecting her to the 3020-a Proceeding, and removing her from her school and placing her in a rubber room. (*See* ECF 68, AC ¶¶ 161, 173-83.) But Complaints about mistreatment of special education students do not qualify as protected activity under Title VII, which requires that "the complaints must relate to race or gender." *Taylor,* 2008 WL 268801, at *13.[12] Raising concerns about Eustache's treatment of special education students thus cannot be the predicate for Title VII and NYSHRL retaliation claims.

> c. *Complaints About Working with Eustache*

Plaintiff also alleges that she engaged in protected activity when she complained to Mota about Eustache's placement in her classroom in the Fall of 2019 and that Mota retaliated by placing false write-ups in her employment file. (*See* ECF 68, AC ¶¶ 17-18, 91-103.) However, Plaintiff states that the basis for her complaints about working with Eustache was that she was afraid of him and did not wish to work with someone who had sued her, not that he treated her

---

[12]     Some courts in this District have held that a teacher may bring a claim under the Rehabilitation Act for disability-related retaliation if they suffer an adverse work event as a result of making complaints about mistreatment of special education students, because "advocacy on behalf of special education students constitutes protected activity under . . . the Rehabilitation Act." *Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *11 (S.D.N.Y. July 28, 2020). However, violation of the Rehabilitation Act is not one of the many claims Plaintiff asserts in the AC.

poorly based on her race or gender. (*See id.* ¶¶ 91, 93, 95.) Therefore, her complaints were not protected activity on the basis of her race or gender. *See, e.g., Batiste,* 2017 WL 2912525, at *11 (dismissing a retaliation claim when "nothing in the Amended Complaint suggests that anything [the plaintiff] said would have alerted a reasonable person that she was complaining about discrimination").

Even if the complaints about working with Eustache were protected activity based on Plaintiff's race or gender, Plaintiff notes in the AC that she filed a successful grievance against Mota for placing the false complaints in her employment file, and the false write-ups were removed from her file and therefore did not lead to any negative consequences for Plaintiff. (*See* AC ¶ 103.) As a result, she did not suffer any discipline or other substantial harm due to her complaints to Mota about being required to work with Eustache. To qualify as a materially adverse employment action, the event must be one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. A negative evaluation that did not result in any adverse consequences would not have kept a reasonable employee from making a discrimination claim. *See Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-CV-6496 (PGG), 2010 WL 1326779, at *17 (S.D.N.Y. Mar. 31, 2010) (stating that "a negative or critical evaluation will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences"), *aff'd*, 417 F. App'x 81 (2d Cir. 2011). Accordingly, Plaintiff should not be able to predicate a retaliation claim on having complained to Mota about being required to work with Eustache.

*d.   Plaintiff's Grievance Against Mota*

Plaintiff alleges that the DOE Defendants brought the 3020-a Proceeding and transferred her out of her school to a rubber room as a result of her successful grievance against Mota. (*See* ECF 68, AC ¶¶ 113, 115.) However, Plaintiff's grievance against Mota was based on Mota's placement of false disciplinary reports in her employment file (*see id.* ¶¶ 102-03), which grievance was not protected activity based on her race or gender. The AC does not allege that Plaintiff claimed in her grievance that Mota had put false write-ups in Plaintiff's file because of Plaintiff's race or gender. Instead, the AC alleges that Mota inserted unfounded complaints in Plaintiff's file because Plaintiff had protested having to work with Eustache and refused to chaperone a trip with him because he had sued her. The grievance was unrelated to Plaintiff's race or gender, and so it cannot serve as the basis for Plaintiff's retaliation claim. *See Batiste,* 2017 WL 2912525, at *11; *Taylor,* 2008 WL 268801, at *13; *Wong,* 2022 WL 17586324, at *10.

*e.   Plaintiff's NYSHRL Complaint*

Plaintiff alleges that she also engaged in protected activity by filing her complaint with the New York State Division of Human Rights in February of 2020, and that the DOE Defendants retaliated by bringing the 3020-a Proceeding against her. (*See* ECF 68, AC ¶¶ 38, 116-19.) However, the 3020-a Proceeding was initiated in June of 2019, before Plaintiff filed her complaint. To plead a claim for retaliation, the protected activity must precede the retaliatory act. *See, e.g., Buompane v. Citibank, N.A.*, No. 00-CV-7998 (DLC), 2002 WL 603036, at *15-16 (S.D.N.Y. Apr. 18, 2002) (granting summary judgment to employer where request for employee's termination predated his protected activity by six weeks).

36

*f.   Plaintiff's Complaint About the Delay in Granting Her FMLA Request*

Plaintiff alleges that before the start of the 2022-23 school year, the DOE discriminated against her when it processed her request for FMLA leave to care for her daughter, who had cancer, more slowly than the requests of male teachers seeking FMLA leave. (*See* ECF 68, AC ¶¶ 216-21.) After her FMLA request took three weeks to be approved, she complained that she was treated worse than similarly situated male colleagues whose FMLA requests were approved promptly. (*See id.* ¶¶ 190-91, 216-21.) Plaintiff alleges that in retaliation for the protected activity of complaining about discriminatory treatment based on her gender in connection with her FMLA request, Plaintiff was not sent back to Abraham Lincoln Intermediate School at the conclusion of her 3020-a proceedings, as she had been promised. (*See id.* ¶ 191-93.) Instead, she was sent to another school, where she was required to work out-of-title (i.e., in an area outside the subject of special education in which she is licensed). (*See id.* ¶ 194.) Notably, she does not assert that her FMLA request was processed slowly because of her history of having brought a grievance against Mota, or because of any other alleged protected activity relating to her conflict with Eustache, or because of her NYSDHR complaint.

To begin with, the protected activity in question – complaining that her FMLA request was being processed more slowly than requests by similarly situated male colleagues – took place in 2022, more than two years after Plaintiff filed her NYSDHR complaint, and therefore could not have been included in that complaint. A court may consider claims absent from the complaint to the relevant agency only if the claims are "reasonably related" to allegations contained in the charge. *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999).

37

Three situations meet the "reasonably related" requirement. The first, loose pleadings, covers claims in which the conduct complained of falls within the scope of the agency investigation that reasonably would be expected to ensue from the original charge. *See Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 (2d Cir. 1978). Second, an employer's alleged retaliatory acts after the EEOC charge was filed satisfy the reasonably related requirement. *See Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1209 (2d Cir. 1993); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 410-11 (2d Cir.), *cert. denied,* 502 U.S. 964 (1991). The third situation involves subsequent incidents that transpire in "precisely the same manner" as described in the agency complaint. *Ghose v. Century 21, Inc.*, 108 F. Supp. 2d 373, 375-76 (S.D.N.Y. 2000), *aff'd,* 12 F. App'x 52 (2d Cir. 2001).

Retaliation for Plaintiff's complaint that her FMLA request was processed more slowly than similar requests by male colleagues would not qualify as reasonably related under the loose pleadings exception, since an investigation of her NYSDHR complaint about disparate disciplinary practices based on race and gender would not have led to discovery of disparate processing of FMLA requests based on the gender of the requesting employee, particularly since the latter incident took place so much later in time. Nor was the incident one that took place in precisely the same manner as the behavior mentioned in the administrative complaint, as required by the third exception.

While the incident would qualify as alleged retaliation that took place after Plaintiff filed her NYSDHR complaint, Plaintiff does not allege that this retaliation occurred *because of* the NYSDHR complaint, and so it is unclear whether this incident should qualify as reasonably related to the behavior alleged in the NYSDHR complaint under the second exception. *See*

*Barkley v. City of N.Y.*, No. 12-CV-2159 (JG), 2014 WL 25270, at \*13 (E.D.N.Y. Jan. 2, 2014) ("Because plaintiffs did not sufficiently allege retaliation for filing an EEOC charge, the second exception is also inapplicable."); *see also Alfano v. Costello*, 294 F.3d 365, 382 (2d Cir.2002) (finding the plaintiff's "vague, conclusory accusations of 'retaliatory conduct' . . . insufficient to meet the . . . requirement of a specific linkage between filing an EEOC charge and an act of retaliation"); *Daigle v. West*, 225 F. Supp. 2d 236, 242 n.13 (N.D.N.Y.2002) ( "For [the second] exception to apply . . . the plaintiff must allege specific linkage between the filing of an EEO charge and the acts of retaliation about which he complains.").

Even if this retaliation claim is appropriately before this Court because it is deemed to be reasonably related to the NYSDHR complaint as alleged retaliation post-dating that complaint, Plaintiff fails adequately to plead the claim. She does not identify the person to whom she complained or the person who made the decision to send her to a new school to work out-of-title. Thus, she does not adequately allege that the protected activity was known to the person who caused her transfer. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2021 WL 4434935, at \*29 (S.D.N.Y. Sep. 23, 2021) ("A plaintiff must also ordinarily plead that the defendant had knowledge of the protected activity.").

She is also silent about how close in time the alleged retaliation (the transfer to another school to work out-of-title) was to her protected activity (the complaint about gender discrimination in connection with her FMLA request). Where, as here, a plaintiff relies on "mere temporal proximity" to substantiate a causal relationship between the protected activity and the adverse work event, the timing of the two events must be "very close." *Galimore,* 641 F.

Supp. 2d at 288. The AC does not substantiate that the protected activity and allegedly retaliatory behavior occurred in close temporal proximity.

In light of Plaintiff's failure to allege that the person who sent her to a new school knew about her protected activity, or that the protected activity and the retaliatory behavior were very closely associated in time, the retaliation claim based on her complaint about the slow processing of her FMLA request should be dismissed. *See id.*

B.  <u>Plaintiff Fails Adequately To Plead Her FMLA Claims (Against the DOE Defendants)</u>

1.  Legal Standard for FMLA Claims

To state a claim for interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must plead five elements: "(1) that she is an eligible employee under the FMLA; (2) that defendant is an employer as defined in [the] FMLA; (3) that she was entitled to leave under [the] FMLA; (4) that [she] gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under [the] FMLA." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

2.  Analysis of Plaintiff's FMLA Claims

Plaintiff alleges her FMLA claim in the most conclusory of terms, parroting the test for a violation set out in the caselaw by saying that she "was denied benefits to which she was entitled under the FMLA." (ECF 68, AC ¶ 222.) As noted above, *see supra* n.8, the AC states in a few places that Plaintiff was denied FMLA leave, and Plaintiff's opposition papers say the same, but the specific factual allegations do not support that position: she alleges only that her FMLA leave took three weeks to be approved and that she was deprived of electronic mail notices

that caused her to lose "several compensated days," without specifying how or why. (*Id.* ¶¶

219-22.) While a delay in granting or responding to an FMLA leave request is a "technical FMLA

violation," courts have held that to state a claim for FMLA interference, a plaintiff must allege a

specific harm caused by the delay, "such as whether [the employee] did not take FMLA days

because [the employee] was waiting for approval." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d

448, 468 (S.D.N.Y. 2011) (quoting 29 C.F.R. § 825.300(b)(1)). Plaintiff's allegations are

insufficient to support a claim for FMLA interference.

C.   <u>Plaintiff Fails Adequately To Plead Her Privacy-Related Claims (Against the City
     Defendants)</u>

Plaintiff alleges that in searching her cell phone, the City Defendants violated the Fourth

Amendment and the New York State Judiciary Law and committed the tort of invasion of

privacy. (AC ¶¶ 226-34.) Plaintiff cites no provisions of the Judiciary Law, and she provides no

explanation of how the search of her cell phone violated the Judiciary Law. Therefore, her

conclusory allegations of a violation cannot state a claim. In addition, "there exists no so-called

common-law right to privacy" under New York State law. *Arrington v. New York Times Co.*, 434

N.E.2d 1319, 1321-22 (N.Y. 1982) (collecting cases). That leaves her with a claim under 42 U.S.C.

§ 1983 for Violation of the Fourth Amendment.

1.   Legal Standards for Plaintiff's Fourth Amendment Claim

A search does not violate the Fourth Amendment when the government obtained

voluntary consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). "The Second

Circuit has stated that 'the concept of knowing and intelligent waiver, which is strictly applied

to rights involving a fair criminal trial, does not govern in the Fourth Amendment context.'"

*United States v. Pena Ontiveros*, 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) (quoting *United States*

*v. Garcia,* 56 F.3d 418, 422 (2d Cir. 1995)), *aff'd sub nom. United States v. Rico Beltran*, 409 F.

App'x 441 (2d Cir. 2011). "Thus, consent need not be knowing and intelligent; '[s]o long as the

police do not coerce consent, a search conducted on the basis of consent is not an

unreasonable search.'" *Pena Ontiveros*, 547 F. Supp. 2d at 331 (quoting *Garcia,* 56 F.3d at 422).

"'Similarly, knowledge of the right to refuse consent is not a requirement to a finding of

voluntariness, though it may be a factor in ascertaining whether the consent was coerced.'"

*Pena Ontiveros*, 547 F. Supp. 2d at 331 (quoting *Garcia,* 56 F.3d at 422-23 (citations omitted)).

2.   Analysis of Plaintiff's Privacy-Related Claims

Plaintiff's claim that the City Defendants violated the Fourth Amendment by searching

her cell phone fails because, as she admits in the Article 78 Affidavit, which she incorporates by

reference in the AC, she consented to the search. *See* Article 78 Aff. ¶¶ 70-72. To the extent

that Plaintiff suggests that her consent was coerced, or that it was not truly voluntary, either

because she did not know she could refuse the request, or because she incorrectly thought

Finder would be representing her in the Eustache Action, or because she did not have a union

representative present when Finder requested her phone, courts in this Circuit have rejected

similar arguments. *See, e.g., Pena Ontiveros*, 547 F. Supp. 2d at 331. Plaintiff's consent, even if

based on a misapprehension that Finder would act as her lawyer in the Eustache Action, was

not coerced; it was voluntary. Therefore, her consent is a complete defense to her Fourth

Amendment claim. *See id.*

D.      Plaintiff Fails Adequately To Plead *Monell* Claims (Against the DOE Defendants)

1.   Legal Standards for *Monell* Claims

Plaintiff seeks to bring claims pursuant to 42 U.S.C. §§ 1981 (prohibiting race discrimination in connection with contracts),[13] 1983 (prohibiting deprivation of a constitutional or federal law right under color of state law),[14] 1985 (prohibiting conspiracies to deprive individuals of their civil rights)[15] and 1986 (providing a remedy against individuals who know about and could have prevented a conspiracy under § 1985 but failed to do so).[16] She brings these claims pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), against DOE and the individual DOE Defendants in their official capacities.

"The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). A government should be held responsible "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). Accordingly, a

---

[13]      *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004) (explaining that Section 1981 prohibits race discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment").

[14]      *See Hirsch v. City of New York*, 300 F. Supp. 3d 501, 508 (S.D.N.Y.), *aff'd*, 751 F. App'x 111 (2d Cir. 2018); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 381 (S.D.N.Y. 2013).

[15]      *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The conspiracy must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* at 1088. Because a municipality can act only through its employees, a municipality cannot itself be a conspirator. *See Warren v. Westchester Cnty. Jail*, 106 F. Supp. 2d 559, 566 (S.D.N.Y. 2000).

[16]      *See Wahad v. FBI*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993). "A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).

plaintiff asserting *Monell* claims against DOE or against the individual DOE defendants in their

official capacities must plead facts showing "that their actions 'were performed pursuant to a

municipal policy or custom.'" *Elias v. City of New York*, No. 07-CV-10260 (TPG), 2009 WL

1528530, at *4 (S.D.N.Y. May 29, 2009) (quoting *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d

206, 226 (2d Cir. 2004)).

> As the Second Circuit explained*,* to show a municipal policy or custom:
>
> the plaintiff need not identify an express rule or regulation. *See, e.g., Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). It is sufficient to show, for example, that a discriminatory practice of municipal officials was so "persistent or widespread" as to constitute "a custom or usage with the force of law," *id.* at 870-71 (internal quotation marks omitted), or that a discriminatory practice of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials," *id.* at 871 . . . .

*Patterson*, 375 F.3d at 226.

However, "mere allegations of a municipal custom" or "a practice of tolerating official

misconduct" are "inadequate to demonstrate the existence of such a custom unless supported

by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at

*13 (S.D.N.Y. Mar. 26, 2015). And while a municipality may be liable for the actions of a single

official, such liability is appropriate "only if that official is someone 'whose edicts or acts may

fairly be said to represent official policy' for the entire municipality." *Agosto*, 982 F.3d at 98

(quoting *Monell*, 436 U.S. at 694). The Second Circuit recognizes that the chancellor of the DOE

"appears to be the final policymaker for the [DOE] with respect to teacher discipline and school

administration." *Agosto*, 982 F.3d at 99, 101 (explaining that, under the New York Education

Laws, "a New York City principal does not have municipal policymaking authority for *Monell*

purposes").

2.   Analysis of the *Monell* Claims

Here, Plaintiff appears to base her *Monell* claims on the allegations that the DOE

Defendants disciplined her more harshly than other employees based on her race and gender,

pursuant to a policy or custom. (*See* ECF 68, AC ¶¶ 235-45). But Plaintiff's allegations about the

supposed municipal policy or custom fall short. There are no concrete allegations in the AC

suggesting that the alleged discriminatory practice of disciplining white female employees more

harshly than others was so "persistent or widespread" that it constituted a "custom" with "the

force of law" or reflected "acquiescence" on the part of senior policy makers. *Patterson*, 375

F.3d at 226 (quoting *Sorlucco*, 971 F.2d at 870-71) (internal quotation marks omitted)).

Plaintiff's allegation that DOE "engaged in a policy, pattern and practice, custom, trade and/or

usage of harming persons similarly situated to Plaintiff, that being white/Caucasian female

persons, in their ability to enjoy the same benefits of employment as compared to persons such

as Defendant Jeffrey Eustache, being black/African American male persons" (*see* ECF 68, AC ¶¶

242) is nothing more than a boilerplate recitation of the elements of a *Monell* claim. That kind

of conclusory pleading is insufficient to state a claim under *Monell*. *See Tieman,* 2015 WL

1379652, at *14 (citing cases).

Since the chancellor of the DOE has the final say in school discipline, Plaintiff's

allegations against the individual DOE defendants with regard to disciplining her also cannot

serve as a predicate for *Monell* liability. *See Agosto*, 982 F.3d at 98.

Plaintiff's allegations about a conspiracy in violation of section 1985 are similarly

conclusory. The AC states: "Defendants, individually and collectively, did work together to

deprive Plaintiff of her civil rights on the basis of race/color, sex/gender"; that "Defendants,

jointly and severally, individually and collectively, through their conduct, acts, and omissions

acted with intent to deprive Plaintiff of the ability to fairly contract with NYC and DOE on the

basis of race/color, gender/sex"; that "Defendants, jointly and severally, individually and

collectively, through their conduct, acts, and omissions worked together to harm Plaintiff and

others similarly situated, on the basis of race/color, gender/sex, to the benefit of those who

were minority/male persons such as Defendant Jeffrey Eustache"; and that "Defendants, jointly

and severally, individually and collectively, through their conduct, acts, and omissions acted to

harm Plaintiff and worked together to harm Plaintiff on the basis of her race/color sex and/or

gender." (ECF 68, AC ¶¶ 238, 240-41, 245.) These allegations provide no specifics, and as such,

they cannot support her claim of conspiracy under section 1985. *See Thomas v. Genova*, No. 11-

CV-6084 (HG) (ARL), 2023 WL 6385800, at *17 (E.D.N.Y. Sep. 29, 2023) ("Even if Plaintiffs'

Section 1985 claim did not fail because Plaintiffs cannot establish an underlying constitutional

violation, it would nevertheless fail because Plaintiffs cannot establish any specific facts to

demonstrate that a meeting of the minds existed between or among the individual

Defendants.").

Because Plaintiff's section 1985 claim fails, so too must her section 1986 claim. *See

Gagliardi*, 18 F.3d at 194.

E.      Plaintiff Fails Adequately To Plead Her State Law Claims[17]

1.   Defamation Claims (Against the DOE Defendants)

a.  *Legal Standards for Defamation Claims*

Under New York law, a claim for defamation must allege (1) a false statement about the complainant; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused special damages. *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 635 (S.D.N.Y. 2009).

Statements made in in connection with litigation are absolutely privileged for the purposes of defamation liability, meaning that such statements cannot serve as the basis for a defamation claim. *See, e.g., Kelly v. Albarino,* 485 F.3d 664, 665 (2d Cir. 2007) (per curiam) (affirming dismissal of defamation claim premised on a statement in an affidavit filed with the court). The privilege attaching to statements made in litigation remains even when those statements become available to the public as part of the record in the case. *See id.*

Statements made in employee evaluations and disciplinary proceedings are subject to a qualified privilege. *See El-Hennawy v. Davita, Inc.*, 853 N.Y.S.2d 925, 925 (2d Dep't 2008) (citing

---

[17]     Defendants do not ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the Court finds that her federal law claims should be dismissed. And there has already been fairly extensive briefing before this Court, such that declining to exercise jurisdiction over the state law claims would be inefficient. I therefore recommend that the Court exercise such jurisdiction over the state law claims even if it dismisses the federal law claims. *See EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18-CV-1047 (PGG), 2020 WL 3488037, at *3 n.3 (S.D.N.Y. June 26, 2020) (exercising supplemental jurisdiction over the plaintiff's state law claims where the defendant failed to brief the issue in its motion to dismiss and where exercise of supplemental jurisdiction served interests of judicial economy and efficiency).

*Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996)). Under New York law, "[c]ommunications by

supervisors or co-workers made in connection with the evaluation of an employee's

performance, including allegations of employee misconduct and communications regarding the

reasons for an employee's discharge, fall within the privilege." *Albert v. Loksen*, 239 F.3d 256,

272 (2d Cir. 2001).

The qualified privilege protects statements only "to the extent that the communication

is 'expressed in a reasonable manner for a proper purpose.'" *Mandelblatt v. Perelman*, 683 F.

Supp. 379, 385 (S.D.N.Y. 1988) (quoting *Toker v. Pollak*, 376 N.E.2d 163, 167 (N.Y. 1978)). The

qualified privilege may be lost if the defendant makes "a false, defamatory statement with

'malice' of either the common-law or constitutional variety." *Albert,* 239 F.3d at 272.

"Common-law malice means spite or ill will and defeats the privilege only if it is the one and

only cause for the publication." *Id.* (internal quotation marks and citations omitted).

"Constitutional or 'actual' malice means publication with knowledge that the statement was

false or reckless disregard of whether it was false or not." *Id.* (internal quotation marks and

citations omitted). However, "conclusory allegations, or charges based upon surmise,

conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Thai v.

Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (quoting *Golden v. Stiso*, 720

N.Y.S.2d 164, 164 (2d Dep't 2001)).

### b. Analysis of Defamation Claims

Plaintiff alleges that the DOE Defendants published claims that she was a sexual

harasser "through administrative hearings and for the purpose of harassment on various court

filings." (ECF 68, AC ¶ 249.) Statements in administrative hearings and court filings are

absolutely privileged and therefore cannot support a claim of defamation. *See Kelly*, 485 F.3d at 665.

Plaintiff also alleges that Eustache made false claims of sexual harassment against her. (*See id.* ¶ 70.) However, those statements are subject to a qualified privilege, because he made them in the context of reporting her supposed misconduct to their employer. *See Albert*, 239 F.3d at 272. The AC contains nothing other than conclusory allegations that Eustache's statements were made with malice: Plaintiff relies on conjecture and suspicion to support her assertion that Eustache's accusations were fabricated to get back at her for cooperating with an investigation into his misconduct at the school. Plaintiff thus has failed adequately to plead a defamation claim based on Eustache's complaints about her. *See, e.g., Williams v. Metro N. R.R.*, No. 16-CV-1141 (LAK) (JCF), 2016 WL 4400307, at *4–5 (S.D.N.Y. Aug. 17, 2016) (dismissing a defamation claim where the plaintiff failed to plead facts showing that the alleged defamatory statements in employment report were made with malice), report and recommendation adopted, 2016 WL 5390904 (S.D.N.Y. Sept. 26, 2016).

    2.   **Plaintiff Fails Adequately To Plead Malicious Prosecution and Abuse of Process Claims (Against the DOE Defendants)**

        *a.*   *Legal Standards for Malicious Prosecution and Abuse of Process Claims*

To state a claim for malicious prosecution, a plaintiff must plead: "(1) the initiation or continuation of a . . . proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations and quotation marks omitted); *see also Hilfiger v. Bradlees, Inc.*,

49

No. 99-CV-4677 (WK), 2002 WL 737477, at *6 (S.D.N.Y. Apr. 25, 2002) (citing *Sundbye v. Ogunleye,* 3 F. Supp. 2d 254, 260 (E.D.N.Y. 1998)). "As with a malicious prosecution claim stemming from an underlying criminal action, the termination of a civil proceeding must have been of such a character so as to fairly imply the lack of a reasonable ground for the prosecution." *Hilfiger,* 2002 WL 737477, at *6.

To state a claim for abuse of process, a plaintiff must allege that the defendants "'(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 228 (S.D.N.Y. 2022) (quoting *Sforza v. City of New York*, No. 07-CIV-6122 (DLC), 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009)). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 Fed. App'x 24 (2d Cir. 2011). To plead a collateral objective, a plaintiff must allege that the defendant wanted "to achieve a collateral purpose beyond or in addition to" the ostensible purpose of the suit. *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). A malicious motive for bringing suit, by itself, does not support a claim for abuse of process. *See id.*

### b.   *Analysis Malicious Prosecution and Abuse of Process Claims*

Plaintiff argues that bringing the Eustache Action and the 3020-a Proceedings constituted malicious prosecution and abuse of process. (*See* ECF 68, AC ¶¶ 263-64, 272-74.) Plaintiff has not adequately pleaded a claim for malicious prosecution based on these two proceedings, because she has not alleged and cannot allege that the proceedings terminated in

her favor. With regard to the Eustache Action, in *Eustache II*, the state court reinstated

Eustache's previously dismissed claims of retaliation against DOE and Plaintiff, finding that his

complaint sufficiently alleged a causal relationship between his complaints to Mota and his

suspension and that he had adequately pleaded that Plaintiff aided and abetted the DOE's

retaliatory behavior. *See Eustache II,* No. 153619/2019, at 5-6. Plaintiff's subsequent motion for

summary judgment was denied on procedural grounds, *see Eustache III,* No. 153619/2019, at 2-

3, and her appeal remains pending before the Supreme Court of the State of New York

Appellate Division, First Department. *See* Notice of Appeal, *Eustache,* No. 153619/2019 (Nov.

25, 2023).

It is even harder to see how the 3020-a Proceeding could be viewed as having

terminated in Plaintiff's favor, given that Plaintiff was required to pay a ten-thousand-dollar

award due to the hearing officer's finding that Plaintiff was guilty of having sent Eustache at

least two texts with sexual content and of attempting to sit in his lap. (*See* ECF 56-7, Opinion &

Award, *Matter of New York City Dep't of Educ.,* State Educ. Dep't No. 36157, at 24-29 (April 25,

2022)). While the hearing officer found that Plaintiff was not guilty of sexual harassment, his

conclusion was based on Eustache's participation in the inappropriate texting with Plaintiff and

not on the absence of misconduct by her. (*See id*.) There is no indication that Plaintiff has

appealed.

Plaintiff's claims for abuse of process fail because she does not allege that the DOE

Defendants sought to use the two cases for a purpose other than having her found culpable for

sexual harassment of Eustache. She does allege that the DOE Defendants had an improper

motive for the suits – in Eustache's case, to punish her for having cooperated with the DOE

when it investigated him for misconduct (*see* ECF 68, ¶ 70), and in the DOE's case, to punish her for the grievance she filed against Principal Mota (*see id.* ¶¶ 113-15) – but an improper motive without an improper collateral goal for the suits is insufficient to plead a claim for abuse of process. *See Savino*, 331 F.3d at 77.

> 3. Plaintiff Fails Adequately To Plead Her Remaining State Law Claims (Against the DOE Defendants)

The AC includes a laundry list of additional state law claims – negligence, negligent retention, negligent or intentional Infliction of emotional distress and prima facie tort – without doing anything more than repeating the elements of those claims. (*See* ECF 68, AC ¶¶ 275-90.) Because Plaintiff fails to tie the factual allegations to the elements of those claims or to provide some explanation why the facts of the case fit the causes of action, the claims should be dismissed. *See Ochre LLC v. Rockwell Architecture, Planning and Design, P.C.*, 530 Fed. App'x 19, 21 (2d Cir. 2013) ("[T]he second amended complaint contains only the sort of 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' that are insufficient to survive a motion to dismiss under Rule 12(b)(6).") (quoting *Iqbal*, 556 U.S. at 678).

### F. Leave To Amend

In her opposition to Defendant's motion, Plaintiff does not request leave to amend, and the Court is not obligated to grant leave to amend sua sponte. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) (holding that, where the plaintiff did not seek leave to amend in opposition to the motion to dismiss, the district court did not abuse its discretion by failing to grant him such leave sua sponte). Moreover, a "plaintiff

need not be given leave to amend" where, as here, she "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-05648 (GHW), 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021).

However, "[i]n this circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead,'" *Leneau v. Ponte*, No. 16-CV-00776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)), unless granting such leave would be futile. *See Moniodes*, 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021).

I believe that it would be futile to allow Plaintiff to replead the following claims: the claims against the Law Department, which is not a suable entity; the Discrimination-Related Claims, the FMLA claims, the *Monell* claims, the defamation claims, the malicious prosecution and abuse of process claims, and the negligence, negligent retention, negligent or intentional infliction of emotional distress and prima facie tort claims against the City Defendants, because they may not be held responsible for actions by the DOE Defendants; the Privacy-Related Claims against all Defendants, because Plaintiff acknowledges that she consented to the search of her cell phone; the Federal Discrimination-Related Claims against the individual DOE Defendants, because the relevant federal discrimination laws do not provide for individual liability; the *Monell* claims against the individual DOE Defendants, because the chancellor of the DOE is the policy-maker of the organization; the defamation claims against the DOE Defendants, to the extent those claims arise out of statements in litigation documents, because such statements are absolutely privileged; and the malicious prosecution claims against the DOE Defendants arising out of the 3020-a Proceeding, because Plaintiff cannot allege that the

underlying proceeding terminated in her favor. Accordingly, I recommend that the Court

dismiss these claims with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

(where the "problem with [a complaint] is substantive [and] better pleading will not cure it,"

leave to amend should be denied as futile).

I recommend that the Court permit Plaintiff to replead the remaining claims: the

Discrimination-Related Claims against DOE; the State Discrimination-Related Claims against the

individual DOE Defendants; the FMLA claims against the DOE Defendants; the *Monell* claims

against DOE; the defamation claims against the DOE Defendants to the extent those claims

arise out of statements in employment evaluations rather that in litigation documents; the

malicious prosecution claims against the DOE Defendants in connection with the Eustache

Action, if that suit ultimately terminates in her favor; the abuse of process claims against the

DOE Defendants; and the negligence, negligent retention, negligent or intentional infliction of

emotional distress, and prima facie tort claims against the DOE Defendants. I make this

recommendation since there is a possibility that Plaintiff may be able to remedy the defects by

adding additional facts in a further amended pleading. I also recommend permitting Plaintiff to

attempt, if she wishes, to bring a claim under the Rehabilitation Act.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the motion to dismiss be

disposed of as follows:

Claims against the Law Department should be dismissed with prejudice;

Claims against the City Defendants should be dismissed with prejudice;

Federal Discrimination-Related Claims against Defendants Mota, Eustache, and Cicillini should be dismissed with prejudice;

Discrimination-Related Claims against DOE should be dismissed without prejudice;

State Discrimination-Related Claims against Defendants Mota, Eustache, and Cicillini should be dismissed without prejudice;

FMLA Claims against the DOE Defendants should be dismissed without prejudice;

Privacy-Related Claims against the DOE Defendants should be dismissed with prejudice;

*Monell* Claims against DOE should be dismissed without prejudice;

*Monell* claims against the individual DOE Defendants should be dismissed with prejudice;

Defamation claims against the DOE Defendants should be dismissed with prejudice to the extent such claims arise out of statements during litigation and without prejudice to the extent such claims arise out of statements in employment reviews;

Malicious prosecution claims against the DOE Defendants should be dismissed with prejudice to the extent such claims arise out of the 3020-a Proceeding and without prejudice to the extent such claims arise out of the Eustache Action;

Abuse of process claims against the DOE Defendants should be dismissed without prejudice; and

Claims of negligence, negligent retention, negligent or intentional infliction of emotional distress and prima facie tort against the DOE Defendants should be dismissed without prejudice.

If the Court adopts this recommendation, I further respectfully recommend that Plaintiff be given 30 days to file a second amended complaint. If Plaintiff does file a second amended complaint, I respectfully recommend that discovery remain stayed pending a decision on any subsequent motion to dismiss; and that Plaintiff be permitted to move to dismiss the counterclaims against her after a decision on any subsequent motion to dismiss.

Dated: January 29, 2024
     New York, New York

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).